**No. 2458**

**Second Circuit**

---

**BONNET-BROWN SALES SERVICE v. THE BUNKIE RECORD, ET AL.**

---

(February 8, 1926, Opinion and Decree)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Depositions—Par. 16.**
The return day for taking testimony fixed in the commission having expired, testimony thereafter taken under the commission was taken without authority and cannot be received in evidence. Wiggins vs. Guior, 12 La. Ann. 177.

2. **Louisiana Digest—Obligations—Par. 26, 37.**
There can be no recovery under a contract the consideration for which has failed. Phillips vs. Adams, 52 La. Ann. 444, 27 South. 65.

3. **Louisiana Digest—Obligations — Par. 145; Sales—Par. 120.**
Where a note is given for a special equipment for the purpose of getting out a Christmas edition of a newspaper under an agreement that the note and accompanying contract will be null if

the equipment is not delivered by December 15, 1923, time is of the essence of the contract and the note and contract cannot be enforced if delivery of the equipment is not tendered until January 21st of the following year.

Appeal from the Twelfth Judicial District Court of Louisiana, Parish of Avoyelles, Hon. L. P. Gremillion, Judge.

## STATEMENT OF THE CASE

REYNOLDS, J. Plaintiff sues on a promissory note forming part of a written agreement. Defendants denied liability on the ground that the consideration for which the note was given had failed, for the reason that the note was given for an equipment to get out a Christmas edition of the Bunkie Record under an agreement that it would deliver in Bunkie on December 15, 1923, or the note and contract should be null and that the equipment was not tendered until January 21st of the next year, when it was refused.

On these issues the case was tried and there was judgment rejecting plaintiff's demand and plaintiff has appealed.

Judgment affirmed.

William A. Morrow, of Marksville, attorney for plaintiff, appellant.

J. W. Joffrion, of Marksville, attorney for defendants, appellees.

## OPINION

The decision in this case depends upon the contract between plaintiff and defendants.

C. K. Michael, one of the defendants, testified, without objection, page 1:

"Q. Will you state to the court when you entered into this agreement and gave this note to the Bonnet-Brown Sales Service Company?
"A. It was on the 5th or 6th of December, 1923. It was the service they have that provides the printers stereotype without (_____). That is mats prepared already for stereotype, and when they sold me their service it was understood that I was to receive it in time to get out the Christmas edition of the Bunkie Record. It was necessary that I should have it by the 14th or 15th of December in order to do that. I had gone around and arranged with the advertisers for increased advertising for that time. Their salesman sold me that with the understanding that he was to deliver it by the 15th and not the last of December. He said he would leave the office at once and telegraph to the house to be sure that it would reach me at that time, because he knew that I would not have it and it was understood between us that it would have to be delivered to me the 15th to be used for the Christmas edition.

\* \* \*

Page 2:

"Q. When did you receive that service if you received it at all?
"A. I did not receive it. I received the mats. That was not the complete service.
"Q. What do you mean by that?
"A. It is mats that are intended for the purpose of placing in a stereotype outfit. The service, as they call it, is the complete thing, the machine and other things. That is the stereotype service. Those were to come to me once a month. My recollection is that the first bunch of mats came prior to the 15th of December, but the machine to use them on didn't come until the 20th or 21st of January following, so that the mats were useless. They could not be used on any other machine. The mats for the following month were never received nor any subsequent service throughout the year ever came. I refused to accept the machine.
"Q. I understood that you had never received it?
"A. I did not receive it. I refused to accept it. I refused to accept it when it arrived because it had not reached me in time to be of any service to me.

\* \* \*

"Q. Was that outfit to be used for the Christmas holidays?
"A. That was the agreement between me and the agent that they would reach me

by that time, and I had prepared everything for a larger Christmas edition."

Page 3:

"Q. What were the conditions of this agreement?
"A. I agreed to buy the machine. I told him that the price of the machine did not justify me in buying it for general use in the office. It would only be useful to me in getting out special editions of the paper, because the ordinary paper machines were good enough for ordinary uses week by week, but for special occasions like Christmas a machine of that kind I could use and would buy the machine with the understanding that it would be delivered to me within the week from the time of purchase, and that if he could do that I would go ahead contracting for ads sufficient to help me in getting out a large edition. He said there was no question about the delivery; that it would reach me by the 15th of December in Bunkie in time to get the edition out, and in time to contract for ads. He told me that I could go ahead and make my contracts; that he would leave the office at once and telegraph to his firm to ship the machine and service so that it would reach me not later than the 15th of December.

Page 4:

"Q. Was time made one of the essential elements of that contract?
"A. The time was an essential element; otherwise it would not have been of any use to me. The agent so understood it."

Jim Norman testified, page 7:

"Q. Did you hear any part of the agreement between the plaintiff company and Mr. Michael?
"A. Yes, sir.
"Q. Where were they talking?
"A. In the back part.
"Q. What portion or what part of the agreement did you hear Mr. Normand?
"A. You want me to tell it all?
"Q. Yes.
"A. When I came in the back, the salesman said that he was going to send this machine by the 15th of December for the holiday: for the Christmas edition at least.

"Q. Did Mr. Michael say anything about the time that he was to send it?
"A. He said if it did not get there on that time, the 15th or 16th, it would be of no use for him.

"Q. Did you hear Mr. Michael tell him that?
"A. Yes, sir.

"Q. What did he say?
"A. He said I will see that it will be here by the 15th of December.

"Q. Did you all make preparations for a special edition for that Christmas?
"A. Yes, sir.

"Q. Was this stereotype machine and mats to be used in this special edition for that Christmas?
"A. Yes, sir.

"Q. Did you receive that machine Mr. Normand?
"A. No, sir.

"Q. Were you all able to get out that special edition of the Bunkie Record for that Christmas?
"A. Yes, sir, if it came in time.

"Q. Did you get it out as extensively and elaborately as you had planned to get it out?
"A. No, sir."

Plaintiff did not offer any testimony contradicting that of either of these two witnesses. It tendered testimony taken under commission, of its president and shipping clerk; but the testimony was taken after the time named in the commission for taking it had expired and it was therefore inadmissible under the authority of Wiggins vs. Guier, 12 La. Ann. 177. The trial judge properly refused to allow the admission of this evidence.

Under all the evidence in the case we are convinced that the consideration for which the note was given had failed.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.