This suit arises as a result of an automobile accident between the plaintiff, Vernie E. McDaniel, and the defendant, Capitol Transport Company, Inc. The plaintiff alleged that he was driving south on U.S. Highway 51 in the Parish of Tangipahoa, Louisiana, on December 12, 1945, in his Chevrolet automobile, at or near the hour of 7 P.M., and that as a car was approaching him, he saw something pass between the lights of the approaching car and his own car and began to slow down, and he discovered that it was several cows crossing from the east to the west side of the highway; that the truck of the Capitol Transport Company, Inc. was traveling south in the same direction as the plaintiff and to the rear of plaintiff at a very fast rate of speed, and in disregard of the presence of the plaintiff, and that when plaintiff was forced to slow his automobile down on account of the cows on the highway in front of him, that the truck of the Capitol Transport *Page 40 
Company, Inc. ran into the rear end of his automobile and, as a result, plaintiff suffered serious permanent personal injuries and property damage; that plaintiff was operating his motor vehicle in its proper traffic lane and under proper control, and that he had both his front and rear lights working and was in no wise contributorily negligent; that the driver of the Capitol Transport Truck was negligent in operating the truck at a fast and unlawful rate of speed, and petitioner alleges that, as a result of the excessive rate of speed of the Capitol Transport Truck, the blow to the plaintiff's car was of such force that it knocked plaintiff's car a distance of more than fifty yards down the highway and into a ditch on the right or west side of Highway 51.
Plaintiff further charges that the driver of the defendant's truck was negligent in that it was not being operated under the proper control, and the driver was not keeping a proper outlook and failed to heed the presence of petitioner in front of him.
Plaintiff further charges that the driver of the defendant's truck was negligent in not applying brakes in an effort to avoid striking plaintiff's car; that the driver of the defendant's truck was also negligent in not making any effort whatever to slow down its speed or any effort to go around plaintiff's car. Plaintiff further invokes the doctrine of "Res Ipsa Loquitur"; that the plaintiff was of the impression that the defendant's truck was attempting to pass his automobile, but while in the act of so doing, saw another car approaching and, in order to avoid a head-on collision, swerved his truck into the rear of plaintiff's automobile and that such action was gross negligence upon the part of the driver of the defendant's truck.
Plaintiff further alleges that Highway 51 is a national highway burdened with heavy traffic, and that the truck of the defendant was attempting to pass the plaintiff as both vehicles were approaching a curve in the highway, which was gross negligence upon the part of the driver of the defendant's truck.
Plaintiff further alleges that, as a result of the collision, he sustained a compressed fracture of the vertebra, a torn and bruised kidney, and that the ligaments in his back are sprained and torn to such an extent that plaintiff will be permanently and totally disabled. Plaintiff also alleges that he was employed at the Ethyl Corporation in Baton Rouge, Louisiana, and was earning from $235 to $250 per month; that he has been unable to return to work and, as a result of the accident, lost his employment with the said corporation. Plaintiff, therefore, prayed for damages in the full sum of $33,337.
The defendants, Capitol Transport Corporation, Inc., and Bruce Dodson and Company, its insurer, who was also made a party to this suit, filed answer denying the main articles of plaintiff's petition, and further alleged in their answer that the truck of the Capitol Transport Company was being operated at a speed not in excess of 25 miles per hour, and "that the plaintiff, evidently seeing cattle in the highway, stopped his car suddenly and without warning, just as another car was proceeding north, and that, as plaintiff stopped his car, respondents' driver was blinded by the lights of the on-coming car and in default of any warning of the stopping of the plaintiff's car, the truck struck plaintiff's car a very gentle blow and inflicted no injuries to the plaintiff and no damage whatever to the plaintiff's car."
The defendants in their answer charge that the sole cause of the collision was "the fact that the plaintiff stopped his car suddenly and without warning, and therefore, respondents plead contributory negligence as a bar to any demands which plaintiff may have on account of the collision."
The case was duly tried, and, without written reasons, the Judge of the District Court rendered a judgment in favor of the plaintiff and against the defendants in the full sum of $6500 for personal injuries and the further sum of $299.50 for property damage, or a total of $6799.50, with legal interest thereon at the rate of 5% per annum from date of judicial demand until paid and all costs of suit.
The defendants have appealed from the judgment of the District Court and the *Page 41 
plaintiff has answered the appeal and asked that the judgment of the District Court be amended and substantially increased to the sum as prayed for of $33,337.
On December 12, 1945, between the hours of seven and seven-thirty P.M., the plaintiff McDaniel who was employed by the Ethyl Corporation of Baton Rouge, Louisiana, was on his way to work, traveling upon U.S. Highway 51 when, at a point on the highway near what is known as Felder's Cabins approximately five miles south of Amite, Louisiana, a car approached him traveling north on said highway, and the plaintiff noticed some object between the lights of the approaching car and his own, and reduced the speed of his car and discovered that there were approximately three cows that had crossed the highway and were blocking the south lane of traffic, and, in order to avoid striking the cows, according to the testimony slowed his car down to approximately five miles an hour in order to bring it to a stop if necessary.
The truck of the defendant, Capitol Transport Company, Inc., was being operated by its driver, traveling south behind the automobile of plaintiff, and, when the plaintiff slowed his car down to five miles an hour or, as defendants contend, brought it to a sudden stop, the driver of the defendant's truck was unable to bring his truck to a stop soon enough to avoid striking the left rear portion of the plaintiff's automobile. The driver of the defendant's truck testifies that it was raining, the pavement was slippery, that his truck had its lights on, as well as the plaintiff's automobile and also the approaching car; that his truck was traveling 50 feet behind plaintiff's car at a speed of 30 to 35 miles per hour; that he applied his brakes but due to the slippery condition of the highway his truck slid some and it was impossible to stop it in time to avoid striking plaintiff's car. However, he testified that he swung his truck out to the left in an effort to avoid the collision. The right front half, from the right fender to the middle portion of the bumper, struck the left rear portion of the trunk, and the left rear fender of the plaintiff's automobile. The pictures of the plaintiff's automobile are in evidence.
As a result of the blow to the rear end of plaintiff's automobile the backs of the front seats gave way and plaintiff and the passenger riding in the car with him, Connie Reeves, were thrown on to the back seat, and the automobile veered off the highway and stopped in the ditch on the west side of said Highway approximately 50 feet from the point of impact.
Plaintiff has alleged specific acts of negligence and defendant has set up contributory negligence on the part of the plaintiff, and plaintiff has introduced its proof as to the alleged negligence of the defendant, and defendant has introduced its proof as to the alleged negligence of the plaintiff, and the Court is clearly in a position to decide the case upon the entire testimony in the record without regard to the doctrine of "res ipsa loquitur" which is plead alternatively.
[1-3] In Hill v. Knight, La. App., 163 So. 727, 728, the following rule of law found in Blashfield's Cyclopedia of Automobile Law, Volume 1, Paragraph 942, was cited with approval:
"The driver of a car following a few feet behind another, under circumstances such that he should anticipate the possibility of obstruction or trouble of some sort, should have his car under such control or proceed at such a rate of speed that he can stop at once if the car in front stops.
"The only rule that can govern the interval to be maintained is that of reasonable care under the circumstances. The mere fact that a vehicle is moving in close proximity to a moving vehicle ahead and keeping up with it does not of itself constitute negligence. In determining whether or not a driver was negligent in not maintaining a proper distance between his automobile and the one preceding him, the speed at which he was traveling, the condition of the road, the amount of traffic, the condition of his brakes, and his ability, acting with ordinary care, to stop his car if required to do so by a situation not produced by another's negligence, should be considered." *Page 42 
Again in Hill v. Knight, supra, the Court held:
"We recognize and approve the rule of law that a following driver should drive at such a speed and maintain such an interval that he can avoid collision with the leading car, under circumstances which should reasonably be anticipated by him. We do not think the established facts in the instant case called for any anticipation on the part of plaintiff of the gross negligence of defendant's driver in abruptly stopping his truck, without any signal or conduct suggesting such action or any apparent circumstance calling for it.
"Conditions in the country differ so greatly from those in a city, and in a city, in different sections and on different occasions, that no hard and fast rule can be laid down. Each case must be decided according to its own peculiar conditions.
"We are satisfied from the meager damage done that, had defendant's driver slowed down gradually, pulled in to the curb, looked behind, or held out his hand in warning signal, plaintiff would have avoided the collision. Hegewisch v. Seiferth, 17 La. App. 199, 135 So. 712."
[4, 5] In the case of Overstreet v. Ober et al., 14 La. App. 633, 130 So. 648, 650, the Court held:
"Under ordinary circumstances, that would not be an excessive rate of speed, but the question whether an automobile is running at an excessive rate of speed depends upon the conditions and circumstances surrounding the particular point under consideration. We think a speed of 25 or 30 miles an hour was excessive under the circumstances shown in the present case. Appellant's driver saw the truck ahead of him and did not, he says, intend to pass it. He drove up to within 25 or 30 feet of it, still maintaining a speed of 25 or 30 miles an hour. He says that, when he saw the truck begin to turn, he did not have time to stop. That is no doubt true. But it was negligent for him to follow so close behind the truck at such speed that he could not stop in case of emergency. We quote the following from Blashfield's Cyclopedia of Automobile Law, Vol. 1, § 29, p. 454. 'In trailing other cars, a motorist must govern his speed or keep back a reasonably safe distance so as to provide for the contingency of a car in front suddenly stopping, and so that he can stop without a collision, or can turn out sufficiently to pass the vehicle in front without going across the street in the way of traffic approaching from the opposite direction, as that will naturally result in collision with such traffic.'
"And the following from Berry on Automobiles (6th Ed.) Vol. 1, § 1034, p. 870: 'A driver of an automobile on a public road, upon approaching another automobile from the rear, must look out for the man ahead, and must have his machine well in hand to avoid injuring the car ahead, so long as the man ahead is driving in accordance with his rights.' "
[6] The driver of the defendant's truck testified that he intended to pass plaintiff's car as soon as the car approaching from the south passed on north, and while the facts would lead us to believe he was closer than 50 feet, it would seem that whatever distance he actually might have been to the rear of plaintiff's car was too close as he did not have his truck under such control that it could be stopped in time to avoid striking plaintiff's car in the rear in case of an emergency. He well knew that it was impossible should an emergency arise, for him to pass plaintiff's car to the east or in the north bound traffic lane, due to the fact that he saw the lights of an approaching car. While it is doubtful that plaintiff, in the face of the emergency on a rainy night, put out his hand in warning, he acted in the only manner reasonable under the circumstances, that is, by reducing the speed of his car in order to bring it to a stop if necessary. When the plaintiff materially reduced his speed, this alone should have been sufficient warning to the driver of the defendant's truck that something was wrong, and, in view of the fact that the driver of the truck knew positively that it was impossible for him to pass to the left of plaintiff's car, he should have been at such a distance, taking into consideration the rainy night, poor visibility, and the slippery condition *Page 43 
of the highway, that he could have brought his truck to a stop in time to avoid the accident.
Even if defendant's truck was following at a distance which ordinarily would be considered safe, such a distance, under the facts and circumstances of the present case was not safe. The facts and circumstances as shown by the testimony in this case prove that the approximate cause of the accident was due to the driver of the defendant's truck driving at an excessive rate of speed and too close to plaintiff's car under the conditions existing at the time of the accident. Also, the trial court resolved the question of liability, which is one of fact, in favor of the plaintiff, and certainly we find no error in his judgment on this point.
The plaintiff at the time of this accident was 34 years of age, married and had two minor children. He was employed at the Ethyl Corporation in Baton Rouge, Louisiana, and had been so employed approximately two years. The record fails to reveal the nature of his work, that is, just what duties he performed for his employer. After the accident he proceeded on to Baton Rouge to report for his work but his back began to hurt him and his brother-in-law brought him back home the next day.
On March 28, 1946, he was dropped from the employ of the Ethyl corporation "because of outside automobile accident he was incapable of performing duties assigned him." He had done no work since the accident and up to the date of the trial on October 25, 1946.
He was treated by Dr. McConnell, however, Dr. McConnell did not testify in this case.
Dr. Stafford of Franklinton was propounded interrogatories and cross interrogatories which have been filed in the record. Counsel for defendants in their brief state that "his testimony has been taken by deposition but in as much as the commission to take same had expired at the time it was taken, the deposition is not admissable in evidence." The record shows that the return date was November 12, 1946, and the certificate of the Clerk of Court of Washington Parish, before whom the deposition was taken, shows that the interrogatories and cross interrogatories were propounded to the witness on December 17, 1946.
Counsel for defendants cites the case of Arceneaux v. Louisiana Highway Commission, La. App., 12 So.2d 733, 737:
"We now consider the contention that the depositions are inadmissable because the respective commissions had expired. In Flower v. Swift, 8 Mart., N.S., 449, the Supreme Court held that where the commission to take testimony has expired, the officer to whom it is directed is without authority to take it. It is true that that case involved the taking of testimony not by written interrogatories but by examination in person. But the rule laid down there has been followed in other cases involving testimony taken by written interrogatories, and it has been held that such testimony, taken after the return day, is inadmissable."
"It is contended on behalf of plaintiff that defendant cannot urge this objection for the reason that, when counsel for defendant filed their cross-interrogatories, the time had already expired and that, therefore, when they did so they waived the right to contend that the testimony had not been taken in time. We do not think so and for two reasons. In the first place, since under the jurisprudence from which we have quoted, the commission having expired, the officers were entirely without authority to submit the questions to the respective witnesses, nothing that counsel could do could recreate in those officers the authority which had completely come to an end. And, in the second place, the Code of Practice, in Article 439, provides that the proper time for making such objections is the time at which the rule to use the testimony in evidence is made returnable. Objections at that time, and in writing, were properly made in accordance with this provision of the Code of Practice."
The Court in this case also cited the holding of the Court in Wiggins v. Guier, 12 La. Ann. 177, to the effect that: *Page 44 
"The Supreme Court held that where the commission has expired, there is no authority whatever in the officer designated, and that his act in taking the testimony after the return day "would be null." We do not think the commission which issues under the provisions of the Code of Practice an idle form. On the contrary, we consider it the power under which the officer taking the testimony is enabled to act, and without which his acts would be null. When, therefore, the return day mentioned in the commission had expired, the authority conferred by it was also at an end, and the testimony taken under it was taken by one without authority."
In Bonnet-Brown Sales Service v. Bunkie Record et al., 3 La. App. 410, the Court of Appeal for the Second Circuit said:
"* * * the testimony was taken after the time named in the commission for taking it had expired and it was therefore inadmissable under the authority of Wiggins v. Guier, 12 La. Ann. 177. The Trial Judge properly refused to allow the admission of this evidence."
There was no rule taken in the present case to use the testimony in evidence but instead, on October 25, 1946, the following minute entry is in the record:
"Vernie E. McDaniel v. No. 12305 Capitol Transport Company, Inc. This day this case came up pursuant to regular order of assignment. The plaintiff represented by Ponder and Ponder and the defendant represented by S.S. Reid and Taylor, Brooks, Porter and Fuller, and it is agreed that statement of Dr. Stafford be put in the record and that defendant submit to examination by Dr. McVeigh this day. After hearing the testimony the matter submitted on briefs to be filed by plaintiff within ten days after he receives the testimony and the defendant given ten days additional to file briefs."
[7] The defendant, according to the above quoted minute entry, waived any objection it might have had to this testimony and it should, therefore, be considered.
Dr. Stafford treated the plaintiff from December 14, 1945, to January 17, 1946, and then at irregular intervals until about June 1, 1946, and in his answer to the interrogatories and cross interrogatories, Dr. Stafford states that he was during that time unable to perform any strenuous labor, that he made no X-ray but that the plaintiff did suffer pain and it was necessary to administer sedatives from December 14, 1945, to January 17, 1946; that he found that the plaintiff was highly nervous and suffered intense pain, and that he had an injury to the back in the kidney region and that further examination of a urinal specimen showed numerous red blood cells and pus; that he knew that plaintiff, on several occasions, had attempted to take up his old job; that is, between the date of the accident and the date he was dropped by the Ethyl Corporation, but that each time he had to give it up and, as a result, would have to stay in bed a few days.
Dr. J.H. McClendon of Amite testified that he had treated the plaintiff for an injury and that he made an X-ray of the plaintiff's back. Dr. McClendon testifies positively that, in his opinion, the X-ray shows a compressed fracture of the vertebrae; that if plaintiff did not have a compressed fracture of the vertebrae, in his opinion, he was a malingerer; that the trouble was between the fourth and fifth vertebrae, and that the last time he examined plaintiff, which was sometime after January, 1946, that the plaintiff was not able to work, and that, if he was going to get well, it should not take longer than one to two years from the date of the injury, and that as to whether a person ever completely recovers from a compressed fracture of the vertebrae depends on their physical condition, their age and severity of the fracture.
Dr. A.L. Lewis of Amite by agreement placed a report in the record which shows the result of an examination of the plaintiff on February 7, 1946. In this report it shows that the X-ray picture was made by Dr. McClendon on January 18, 1946; physical examination by Dr. Lewis states that there was an "area of tenderness on deep pressure over fourth and fifth lumbar vertebrae; painful on stooping and painful while lying on abdomen and over extending thighs; no hernia, nor any other *Page 45 
signs of disease or injury." Patient also stated to Dr. Lewis that he had had a kidney stone in 1942 but there had been no recurrence since then. Dr. Lewis's impression was that "painful back from a traumatic injury; no evidence of fracture or dislocation of spine; traumatic injury to kidney which is completely recovered and is causing no disability." Under the head of "prognosis" it is Dr. Lewis's statement that: "Is undertermined as all of his complaints are subjective and I do not know how long his pain will last." Dr. Lewis examined the X-ray picture and in his opinion it did not show a compressed fracture of the vertebrae.
Dr. Dorothy Mattingly testified as an expert witness in the case. She practised "all phases related to specialized X-ray" the past eight years. She obtained her degree from Louisiana State University and also had four and one-half more years training in X-ray at Charity Hospital and devoted four years of that time exclusively to X-ray work, and, in addition, spent two months at Peter Van Brigham Hospital in Boston in particular training in X-ray work. She testified positively that the X-ray plate made by Dr. McClendon, which is the only one made of the plaintiff, did not show any compressed fracture of the vertebrae. On Page 46 of the Transcript, she testified as follows:
"Q. Will you interpret the plate? A. It is an AP view of the lumbar spine in the upper pelvis. There was no evidence of fracture or dislocation. There is hypertrophy of the last lumbar transverse processes, with bilateral sacralization and there is incomplete fusion of the fifth lumbar and first sacral vertebrae.
"Q. Is this hypertrophy of the last lumbar transverse processes with sacralization bilaterally and incomplete fusion of the lumbar and sacral vertebra due to trauma or to a congenital condition? A. Congenital defect."
She would not testify whether the congenital defect which she described could cause pain or not.
Also in the record is the testimony of Dr. Charles McVea who did not qualify himself as an expert in the interpretation, of X-ray plates but who had at least the same training as Dr. Lewis and Dr. McClendon and in his practice had occasion to read X-ray plates. In his opinion, he could not find any evidence of a compressed or depressed fracture of the vertebrae.
Dr. McVea, on the date of the trial, made an examination of the plaintiff and stated that he believed the plaintiff "had suffered some muscular strain of his back and I think at the present time he still has some evidence of muscular strain." He did not believe that the condition of muscular strain or pain could be due to kidney disease, but thought it could well be due to trauma for the reason that he did not "believe that kidney disease alone would give him the stiffness that was exhibited in his back on examination."
Dr. McVea on cross examination testified as follows:
"Q. Dr. McVea, the medical staff of Ethyl Corporation, discharged this man because he was unable to do industrial labor — work in their plant — due to an injury sustained. Do you think that would be a correct result of such injuries as you have learned he sustained in this automobile collision? A. I think that is a possible result, yes."
[8] There is no evidence in the record that the plaintiff ever had his back strapped or wore a brace. As there are three doctors, one of them an acknowledged expert in X-ray work, who testified that plaintiff did not suffer a compressed fracture of the vertebrae as against one who did testify that he had a compressed fracture of the vertebrae, the plaintiff has certainly not borne the burden of proof in this respect, and from the testimony we find that the plaintiff suffered an injury to his kidney which had healed at the time of the trial, and an injury to his back in the nature of a muscular strain which had not healed at the time of the trial.
[9] The record shows that the plaintiff at the time of the injury was employed by the Ethyl Corporation; it also shows that he was dropped from this employment *Page 46 
"because of outside automobile accident he is incapable of performing duties assigned him." He was unable to work and even at the date of the trial, which was approximately ten months after the accident, defendant's doctor found evidence of the muscular injury to the back, and he is therefore entitled to loss of earnings for at least ten months which the record shows to be approximately $275 per month or a total of $2750.
We are of the opinion that $2000 damages for his injuries and pain and suffering would be sufficient. He is also entitled to $299.50 damages done to his automobile, making a total judgment of $5049.50 together with legal interest from date of judicial demand until paid in favor of the plaintiff and against the defendant.
As amended the judgment of the District Court will be affirmed, costs to be paid by the defendants.
 On Application for Rehearing.