### LANNES v. ESCOUSSE et al.*
### No. 16338.

Court of Appeal of Louisiana. Orleans.

Feb. 21, 1938.

* Rehearing refused March 21, 1938.

H. J. Moore, of New Orleans, for appellant.

St. Clair Adams & Son, of New Orleans, for appellees.

JANVIER, Judge.

At about 12:30 o'clock a. m. on September 2, 1934, an automobile collision occurred at the corner of Monroe and Palm streets, which intersect at a right angle. A Chevrolet driven by plaintiff, Sherman D. Lannes, was proceeding down Palm street, and a Plymouth driven by Charles A. Escousse was on Monroe street going from the New Basin Canal towards Claiborne avenue. Lannes, alleging that the Escousse car did not stop before entering the intersection, as the traffic ordinance of the city required, and that the said Escousse "raced across the said intersection," and charging that this was an act of negligence and was responsible for the resulting collision, prays for judgment against Escousse and also against his liability insurance carrier, Ætna Casualty & Surety Company, in the sum of $5,000, which he alleges will be required to compensate for his pain and suffering, his loss of earnings, and for his humiliation; the last-mentioned item of damage being based on the alleged fact that defendant Escousse caused the subsequent arrest of plaintiff on a charge of violating the traffic laws of the city.

Defendants deny that Escousse was in any way at fault and, while admitting that, because of the relative directions in which the automobiles were moving, the one driven by Lannes would have had the right of way had the two reached it at about the same time, they allege that the Lannes car did not have the right of way because the Escousse car entered the intersection first and had almost completed the crossing when it was run into by the other, which had approached at high speed and without headlights. They allege that the causes of the accident were:

(1) The carelessness of Lannes in driving at a speed in excess of thirty miles per hour in violation of the provisions of

section 3(b) of article V of the Traffic Ordinance of the City of New Orleans, No. 13,702 C.C.S.

(2) In failing to recognize the right of Escousse "to complete the crossing after having entered the intersection * * *," to which right he is alleged to have been entitled by reason of the provisions of section 15(b) of article V of the said ordinance.

(3) In operating an automobile "on a dark night without headlights * * *," also in violation of the said ordinance, section 7(a) of article IX. And,

(4) In operating an automobile "while under the influence of alcohol."

From a judgment of the district court dismissing his suit, plaintiff has appealed.

As is usual in such cases, each driver asserts that he looked carefully for approaching traffic on the intersecting street, and, seeing none, proceeded at slow speed and with utmost caution. The respective locations of the damage sustained by the two cars shows beyond the shadow of doubt that the Escousse car must have entered first since it was struck in the side, rather near the rear, by the Lannes car. It is not possible that it could have entered the intersection and dashed in front of the Lannes car after the latter had already entered, because the evidence shows rather conclusively that the Escousse car was in first, or "slow-speed gear" when the accident occurred. A police officer, who examined the car shortly afterwards and was told by Escousse that it had been in "first gear," states that when he examined it he found that statement to be correct. While, of course, this bit of evidence is not conclusive, we deem it important because it is certain that, if the intersection had been entered at high speed and without a prior stop, as plaintiff charges, Escousse could not have shifted it into "low gear" before bringing it to a stop. As we have said, Escousse would not have been justified in dashing out into the intersection if, in fact, the Lannes car had entered first, or had reached it at about the same time at which the Escousse car reached it, since Lannes, approaching from the right, would have had the right of way. Consequently, the failure of Escousse to see the approaching car and his manipulation of his car so as to cause it to enter when the other was so dangerously close require explanation, which, however, is readily found in the fact that the Lannes automobile, at the time, was not equipped with lighted headlights.

Lannes claims that the headlights were burning, but we find that in this he is mistaken. A police officer, shortly afterwards, made an examination to determine whether the lights could burn and found that they were not burning and, apparently, could not burn. He testified that he "turned the lights to see if they were burning." He added, "This gentleman (Escousse) called my attention that the car had no lights and I wanted to see for myself," and later he again said that the lights "positively" would not burn.

Counsel for plaintiff argues that the lights would not burn because they had been broken in the collision, but the record shows conclusively that this was not the fact and, of course, it would have been very foolish for a police officer to make an examination to determine whether the lights had been previously burning if they had been so badly damaged in the collision that obviously they could not burn.

Miss Ursula Murphy, who later became Mrs. Escousse and who was riding with Escousse in his car at the time, says:

"I turned to my right * * * and saw a huge black object with no visible lights coming at a terrific speed."

While Escousse himself is unable to say that the lights on the Lannes car were not burning, he asserted that, though he looked, he did not see that car. Here, again, counsel argues that he did not look in that direction, but, though the record contains a confusing statement resulting from an obvious error of the stenographer, it convinces us that he did look in both directions and did not see it.

Shortly after the accident Lannes made a statement concerning the facts surrounding the collision, and when this statement was produced on the trial it differed substantially from the testimony which he then gave. This statement was attacked by counsel for Lannes, who charged that it was "padded" and that it did not represent what Lannes had actually said.

It appears that Lannes did make a statement and that the statement was later written and presented to him and that he signed it after it was read to him. As a matter of fact, when cross-examined concerning the statement he finally declared that it was substantially correct. It shows, among other things, that when his car reached the crossing the Escousse car was "already

well into the intersection". Later, in the same statement, he said that "the other car had entered the intersection before my car had."

We feel that we must refer to the fact that Mrs. Lannes, who, at the time, was in the automobile with Lannes, was not produced as a witness and that no explanation of her failure to testify was given. As counsel for defendants state in their brief, "this circumstance gives rise to the inference that the testimony of Mrs. Lannes would have been unfavorable * * *."

Counsel for defendants, with commendable frankness, state that their charge in the answer that Lannes was under the influence of alcohol is probably not sufficiently supported by the record. They state that the charge of intoxication contained in the answer was based on the report of the police officer who made the investigation, but that, while the evidence showed that Lannes had imbibed "a few beers," they feel that this was not sufficient to show that he was intoxicated.

We feel, after a review of the record, that the proximate cause of the accident was the carelessness of Lannes himself in operating his car without lights at an excessive speed and in paying no attention to the approach of the other car.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed at the cost of appellant.

Affirmed.

* Rehearing refused March 21, 1938.