72 So.2d 643 (1954)
RHEA et al.
v.
DAIGLE et al.
No. 3843.
Court of Appeal of Louisiana, First Circuit.
April 26, 1954.
Rehearing Denied May 31, 1954.
Writ of Certiorari Denied July 2, 1954.
Montgomery, Barnett, Brown & Sessions, New Orleans, Elton A. Darsey, Houma, for appellants.
Leonard Greenburg, Houma, for appellees.
LOTTINGER, Judge.
This is one of three damage suits arising out of an automobile accident which occurred in the Parish of Terrebonne sometime before midnight on the 2nd day of December, 1950. It appears that Donald W. Rhea and his wife, who were occupying the front seat of a new 1950 model Ford automobile belonging to Delta Iron Works, Mr. Rhea's employer, with Rhea driving, together with a Mr. and Mrs. Wesley Gatlin, who occupied the rear seat, were proceeding from Thibodaux, Louisiana, towards Houma, Louisiana, on paved Highway No. 69 connecting these two cities, when their automobile became involved in a head-on collision with a 1937 Ford automobile owned and driven at the time by one Gaston Daigle. The latter, who at the time was a minor living with his father, one Robert Daigle, was accompanied by two other *644 young men, Daniel Richard and James Blanchard. Following the head-on collision between the automobiles of Rhea and Daigle, the Rhea automobile was struck in the rear by a 1950 model Pontiac automobile owned and operated by one Edgar J. Hebert, Jr., who had been travelling in the rear of and in the same direction as Rhea. Hebert was accompanied at the time by two friends, namely Rex Christyberg and Jack Brooks.
In the instant suit, which bears Docket No. 14573 in the court below, Mr. Rhea seeks the sum of $23,779.25 and his wife the sum of $12,000. They have joined as parties defendant Gaston Daigle, minor, Robert Daigle, the latter's father, Edgar J. Hebert, Jr. and the Maryland Casualty Company, Hebert's liability insurance carrier. For a cause of action the Rheas alleged that shortly before the accident they were proceeding in a southeasterly direction towards Houma in the right hand traffic lane of Highway 69 and that after having just crossed a small bridge known as the Bayou Cane Bridge, located about three miles northwest of Houma, the Ford automobile driven by Gaston Daigle in the direction of Thibodaux veered from its right hand traffic lane directly in the path of their car and collided with same. It is further alleged that almost simultaneously with this collision, the Rhea car was struck from the rear by that driven by Edgar J. Hebert, Jr. The Rheas then set forth that as a result of the collision they were knocked unconscious, and that, although they were unable to allege which of their various injuries was attributed to which collision, the injuries and damages received by them were due to the joint negligence of both defendants Daigle and Hebert. The Rheas further pleaded that as they were guilty of no negligence and as they had no control over either of the other vehicles, the doctrine of res ipsa loquitur should be applied. In the alternative, it was alleged that Daigle was negligent in failing to keep a proper lookout, in failing to keep his car under control and in driving from his own lane of traffic directly into the path of the Rhea car. It was averred that Hebert was negligent in failing to keep a proper distance from the car ahead of him, in failing to keep a proper lookout, in failing to keep his car under control, and, under the circumstances, in proceeding at an excessive rate of speed.
The lower court appointed Wilmore J. Broussard, Jr., as attorney ad hoc to represent the minor, Gaston Daigle. The answer filed by this gentlemen on behalf of Daigle set forth that the latter was guilty of no negligence and that the accident was caused by the fact that Rhea failed to dim headlights, thus blinding Daigle and causing him to leave his own traffic lane. It was further alleged that Rhea was negligent in failing to keep a proper lookout and in operating his automobile while under the influence of liquor. In the alternative it was alleged that the Rheas and the Gatlins were on a joint venture and that Mr. Rhea's negligence being thus imputable to them, recovery should be denied them because of contributory negligence.
The other defendant, Edger J. Hebert, Jr. was charged with negligence in failing to keep proper control, failing to maintain the proper distance from the Rhea car, failing to keep a proper lookout and with excessive speeding.
The answer of Edgar J. Hebert, Jr., and the Maryland Casualty Company is substantially the same as that of young Daigle insofar as the alleged negligence of Rhea and the occupants of his vehicle are concerned. Gaston Daigle was charged with negligence in failing to keep a proper lookout, failing to maintain control and in crossing from his lane of traffic into the path of the Rhea car. It was further alleged that the collision between the Rhea and Daigle automobile in Hebert's traffic lane created a sudden emergency and that Hebert's collision with the Rhea vehicle was unavoidable and due to no fault on the part of the former. These defendants denied, as did Daigle, that the doctrine of res ipsa loquitur was applicable and alleged, as stated before, practically the same acts of negligence on *645 the part of Rhea. In addition, the Maryland Casualty Company pleaded a limitation of liability as contained in its policy at $10,000 for any one person and $20,000 for any one accident.
In the case of Delta Iron Works, Inc. v. Gaston Daigle et al., which bears Docket No. 14581 of the lower court, the plaintiff seeks the sum of $2,137.08, representing the damages allegedly caused as a result of the accident to the 1950 Ford automobile driven by Rhea. The petition in this suit, insofar as the question of negligence is concerned, is substantially the same as that filed by the Rheas, and the same is true with respect to the answers filed on behalf of the various defendants.
The third case arising out of the same accident is that of Wesley Gatlin and wife versus Robert Daigle et als., Docket No. 14597 of the lower court, wherein Mr. Gatlin seeks the sum of $52,183.40 and Mrs. Gatlin the sum of $20,000. Joined as defendants in this suit are Robert Daigle, Gaston Daigle, Edgar J. Hebert, Jr., the Maryland Casualty Company, Delta Iron Works, Inc., and the Travelers Insurance Company, liability insurer of the latter, and Donald W. Rhea. In their petition, generally the same acts of negligence were charged against Hebert and Daigle as in the Rhea suit. It was further alleged, which is undenied, that the automobile driven by Rhea was the property of Delta Iron Works, Inc., and that he was an officer of this corporation and operating the vehicle with its consent. The Gatlins then alleged that they were the guests of the Rheas, that they were knocked unconscious and that they have little or no knowledge as to how the accident occurred. They alleged that they had no control over any of the vehicles, that they were in no way negligent and pleaded the doctrine of res ipsa loquitur insofar as the drivers of all three vehicles were concerned. In addition, they alternatively attempt to set out the alleged acts of negligence of which each driver was guilty, these acts being virtually the same as set forth in the other suits, and also pleaded the doctrine of last clear chance on Rhea's part.
Delta Iron Works, Inc. and the Travelers Insurance Company first filed an exception of vagueness and an exception of no right or cause of action, following which the Gatlins filed a supplemental and amended petition setting forth that Rhea was, under the established policy of his company, acting within the course and scope of his employment and entertaining them as his guests.
The answers of Gaston Daigle, Edgar J. Hebert, Jr. and the Maryland Casualty Company were substantially the same as those filed in the other two suits. That of Delta Iron Works, Inc., Donald W. Rhea and the Travelers Insurance Company set forth that Rhea was operating the automobile with the consent of the owner and that he was an additional insured under the terms of the policy issued by the Travelers Insurance Company. This answer also denied any negligence on Rhea's part, setting forth that Daigle had suddenly come into his lane of traffic without warning and placing him in such a position that the only action that could be taken was to apply the brakes, which he immediately did. Rhea also denied that he was not "mentally alert" as had been alleged, but in the alternative pleaded contributory negligence on the part of the Gatlins in permitting him to operate the vehicle when not mentally alert, if such were proven to be a fact. The Travelers Insurance Company pleaded a policy limitation of $50,000 for any one person, and according to the policy itself, which is in the record, the total policy limit is $100,000.
By agreement of counsel the three cases were consolidated for trial with the understanding that separate judgments be rendered in each.
Following a very lengthy trial (the transcript of testimony comprises 502 pages), the trial judge found that the injuries and damages complained of by the various plaintiffs were caused by the joint negligence of Gaston Daigle and Edgar J. Hebert, Jr. Accordingly, judgment was rendered against these two, jointly and in *646 solido, together with Robert Daigle and the Maryland Casualty Company as follows:

 Plaintiff Amount Awarded
 Donald W. Rhea $12,279.25
 Mrs. Donald W. Rhea 5,000.00
 Mrs. Wesley Gatlin 5,000.00
 Wesley Gatlin 33,931.75
 Delta Iron Works, Inc. 1,687.08

In addition to the amount awarded as set out above the trial judge fixed the fee of the attorney appointed to represent Gaston Daigle at the sum of $450 and taxed same as costs.
Following the rendition of the above judgment on January 13, 1954, an application for a new trial or, alternatively, a rehearing was filed, and while the motion for a new trial was denied, the motion for a rehearing was granted, restricted, however, to the question of quantum. Following resubmission of the matter, the lower court, on January 20, 1954, signed new judgments apportioning the maximum liability of the Maryland Casualty Company. The new judgment in favor of Donald W. Rhea preserved the original amount awarded, but restricted the liability of the Maryland Casualty Company to $4,822.66 for his personal injuries and medical expenses, $688.86 for medical expenses for his wife and $2,244.24 for Mrs. Rhea personally. The new judgment in favor of Wesley Gatlin also preserved the original amount awarded but restricted the liability of the Maryland Casualty Company to $10,000 for himself and $2,244.24 for Mrs. Gatlin. The judgment in Suit No. 14581 (Delta Iron Works, Inc. v. Gaston Daigle, et al.) remained unchanged as did the taxing of $450 as costs for the services of the attorney appointed to represent Gaston Daigle.
The matters are now before us on a suspensive appeal taken by the Maryland Casualty Company and on devolutive appeals taken by Edgar J. Hebert, Jr. and Mr. and Mrs. Wesley Gatlin. The appeals taken by the Maryland Casualty Company and Edgar J. Hebert, Jr., were answered by Mr. and Mrs. Rhea asking that the judgment of the district court be affirmed and that, alternatively, if the judgment in favor of the Gatlins be amended in such a way as to necessitate the reapportionment of the liability of the Maryland Casualty Company that they be given the benefit of any increase thereof.
As defendant Robert Daigle filed no answer or other pleadings in the court below, a preliminary default judgment was taken by all plaintiffs and confirmed on the trial of the case on its merits. No appeal or other appearance has been made by him in this court.
The trial judge rendered written reasons for judgment in the course of which with respect to the operations of the Rhea and Daigle automobile, he made the following observations and findings:
"The autoptic preference made by Hebert and Maryland Casualty Company, if the Court understands such offer properly, has given the Court the right to view the scene of the accident. We have not only viewed the scene of the accident along in the presence of counsel and the interested parties, but again and again in traveling from and to Thibodaux and Houma, both by night and by day. The court has had reason to reflect on this case at the actual scene in passing, and none of this has altered or changed the Court in some of its very definite, fixed opinions as to the facts of this case.
"The court finds as a fact that Donald Rhea, in the operation of his automobile, was mentally normal in every respect. There is no evidence that he was sleepy, and certainly there is no evidence in this record to even infer that Mr. Rhea was mentally affected by the very small amount of drinks which he frankly admits he had consumed earlier in the afternoon, a long time prior to this accident. We have no reason whatsoever to doubt Mr. Rhea's testimony when he denies having had anything to drink from the time he left New Orleans around dark (a little before or a little after) until the accident *647 happened. The mere fact that Mr. Gatlin, and possibly other occupants of the Rhea automobile, may have had something to drink at the home of Mr. Carl Heck, in Thibodaux, is not convincing proof that Mr. Rhea had anything to drink there.
"It is a proven fact, and we so find, that Mr. Rhea, in the operation of his vehicle, was not exceeding the speed limit, nor was he operating his vehicle improperly in any manner, unless we should determine that his lights were faulty, and that these faulty headlights blinded the oncoming Daigle automobile, as all other parties except Mr. and Mrs. Rhea would have us to believe and find. The Rhea lights were not faulty or glaring.
"We find as a matter of fact that even if the headlights on the Rhea automobile were of a manufacture and intensity of strength that they may have blinded Mr. Daigle had they been shining directly into his face, that, nevertheless, the Rhea lights did not blind Gaston Daigle, because it was physically impossible for this to have occurred.
"The situs of this accident is the first major bridge that we reach on the paved highway while driving from Houma to Thibodaux. It is called the Bayou Cane Bridge, and is located approximately three miles out of Houma. The bridge itself is located in what we call a small straight stretch of road, probably about two hundred feet long. As one approaches this bridge from Houma one must turn to the right at a slight angle about one hundred feet before reaching the bridge, then go straight across the bridge for about two hundred feet, and then turn slightly to the right again and enter into another straight of way on to Thibodaux.
"As one approaches this bridge from either direction, when one is about one hundred yards away from the bridge one cannot see one hundred yards of the road on the opposite side of the bridge. Of course, as one travels on the road toward Thibodaux, this curve is to the right. Likewise, as one travels this road from Thibodaux towards Houma, the curve is to his left. Thus, the road curved to the right of Daigle and to the left of Rhea (and, of course, to the left of Hebert who was traveling behind Rhea and in the same direction).
"Mr. Hebert was proceeding from Thibodaux in the direction of Houma. He was traveling behind the Rhea automobile. While under cross examination he stated, on page 381 of the transcript:
"I knew I couldn't pass to the left, and as you pass that turn, as you turn that bridge those pecan trees flash in your lights * * *'
"Mr. Hebert was speaking of pecan trees on the field side of the paved road, or to one's right as one approaches in the direction of Houma. Again he repeated this same testimony on page 384 of the transcript when he stated:
"I'm familiar with that spot, and as I said as you turn on the bridge your lights flash on the pecan trees. * *'
"The most interested parties, other than Hebert, in proving that Rhea's lights were blinding Gaston Daigle and either totally or partially the cause of the accident, are Mr. and Mrs. Gatlin. Counsel for Mr. and Mrs. Gatlin correctly stated, on page 20 of their brief directed to this court:
"`It is plainly seen that when this car of Rhea was traveling in this curve towards Houma, the lights of the Rhea car did not concern Gaston Daigle any because the projection of the rays of light was away from the car driven by Gaston Daigle * * *'
"We find as a matter of fact that as the Rhea automobile was approaching Houma, all during the time that it was *648 making the curve located on either side of the bridge, that the Rhea headlights were cast toward the right shoulder of the highway of the Rhea car; that as the Rhea car crossed over the bridge and approached the curve to its own left approximately a hundred feet further on, that the headlights of the Rhea automobile were cast into the pecan trees on the right of the highway, and not into the face of the oncoming Gaston Daigle.
"Photograph Defendant-H is a general picture of the highway showing the bridge as one approaches from Houma driving toward Thibodaux. And, incidentally, this picture demonstrates very clearly that if the Daigle automobile was traveling in its own lane of traffic toward Thibodaux, and the tendency would be for the Daigle automobile headlights to shine into the face of the Rhea automobile driver. Whereas, the Rhea automobile headlights would be focused in these pecan trees shown on the left side of the highway in this photograph marked Defendant-Hebert-H. Also, while on this photograph, one can see the second pecan tree from the bridge. This is about in the apex of the curve. This is approximately where the accident happened. I say approximately because I am not at this time attempting to give exact measurements. I find that the apex of this curve on the Houma side of the highway is near the second pecan tree; that this is about eighty or eighty-five feet on the Houma side of the bridge; and that this is where the accident occurred.
"By looking at Defendant-Hebert-I one views the straight of way in the middle of which is located the bridge to which I have previously referred. Again, this shows more clearly the apex of the curve to which I have referred above. Glancing at Defendant-Hebert-1 photograph is rather convincing in reaching a conclusion that the headlights of the Rhea automobile would be reflected into the pecan trees instead of in the face of Gaston Daigle.
"On looking at photograph Defendant-Hebert-J we view the scene of the collision from the bridge looking forward the direction of Houma. We see again that as Rhea was traveling in this direction that his headlights were reflected to the right of the highway and into the pecan trees instead of to his left into the face of Gaston Daigle. The small strip of additional pavement to the right of the highway and adjacent to the original strip was placed there after this accident occurred, but it does not change the situation in any respect.
"We find as a fact that the Rhea automobile did not get out of its own proper lane of traffic.
"We find that the collision between the Rhea and Daigle automobiles occurred between eighty and ninety feet on the Houma side of the Bayou Cane Bridge."
A careful examination of the record has convinced us that the above quoted factual findings are substantially correct and we therefore agree with the trial judge's conclusion that Rhea was free from negligence.
The next question presented concerns the negligence, if any, on the part of young Daigle. With respect to the manner in which he operated his vehicle and the manner in which the collision between his car and that of Rhea occurred, the trial judge had this to say:
"We find that the Gaston Daigle automobile turned into the Rhea lane of traffic and was completely in the Rhea lane of traffic at the time of the headon collision between the Rhea and Daigle automobiles.
* * * * * *
"We find as a fact that Gaston Daigle was not paying much attention to his driving; that he was concerned with the actions of two of his friends *649 who were riding with him; that while his attention was on his two friends he suddenly and obviously without warning, pulled to his left over into the wrong lane of traffic, thus causing an inevitable head-on collision between his and the automobile owned by Delta Iron Works, Inc. being driven by Mr. Rhea.
"This court has known State Police Officer Naquin for many years. Mr. Naquin is a kind-hearted, conscientious officer. Officer Naquin testified that after the accident and on the following day, Gaston Daigle stated that he had turned to separate his two friends and had pulled over into the wrong lane of traffic. This admission on the part of Gaston Daigle was corroborated by Officer Charlton Rozands. The court entertained no doubt that Gaston Daigle made this admission. The mere fact that it later developed that Gaston Daigle's two friends were not riding in the "back seat" does not alter the effect of the damaging admission made by Gaston Daigle. These admissions made by Gaston Daigle were not made under any pressure or threats, but were made freely and voluntarily. Certainly, if Gaston Daigle had been blinded by any lights of the Rhea car, it would have been to his advantage to have told this to the officers.
"Though Gaston Daigle was a minor, he nevertheless was sufficiently grown to have been working for a living, driving an automobile, drinking and shortly thereafter, getting married, because the record shows that he did get married on September 14, 1952, as will be seen by reference to the motion and order discharging Attorney W. J. Broussard, Jr., from any further duties as Attorney ad hoc for Gaston Daigle.
"It is difficult for this court to accept the argument that Gaston Daigle was frightened by Officer Naquin into making the admission which he made. We do not believe it to be true."
The trial judge stated in his written reasons the minutest details for the basis of his findings just quoted above. Much of this concerns an analysis of the testimony of James Blanchard and Daniel Richard, the guests of Daigle. The testimony and statements of these boys changed considerably from time to time. It would only unduly lengthen this opinion to quote from either their testimony or the findings of the trial judge with respect thereto. Suffice it to say that we certainly cannot find any manifest error on the part of the trial judge in this respect and we find that the record amply supports his conclusions just above quoted.
Having concluded that the lower court was correct in absolving Rhea from negligence and in finding that the head-on collision was due to the fault of young Daigle, it is, of course, unnecessary to decide whether Rhea was driving the Delta Iron Works, Inc. automobile in the course and scope of his employment or whether the Rheas and Gatlins were on a joint venture. Nor is it necessary to pass upon imputed negligence on the part of Mrs. Rhea or the Gatlins.
The next and last question, insofar as liability is concerned is, whether Edgar J. Hebert, Jr. was at fault and, if so, whether same was attributable to the accident and to what extent. The trial judge's conclusions are as follows:
"The cases of Lynch v. Fisher [La. App.], 34 So.2d 513, and McDaniel v. Capitol Transport Co. [La.App.], 35 So.2d 38, substantiate the rule of law that it is duty of a driver of an automobile following another to have his car under such control as to be able to bring it to a complete stop within the range of his vision or penetration of lights when confronted by any obstructions. His speed and distance must be so regulated as to provide for the sudden stopping of the vehicle in front of him.
"We believe and find as a fact that Mr. Hebert was negligent and that his negligence was a contributing and *650 proximate cause of the damage and injury suffered by all plaintiffs in these cases.
"Almost simultaneously with the head-on collision between the Rhea and Daigle automobiles, Hebert rammed into the rear of the Rhea car.
"In making his police report, Officer Naquin (pages 388 and 389 of transcript) stated that the Hebert car was traveling at about 45 miles per hour at the time the Hebert automobile struck the rear of the Rhea car. The blow was sufficient to buckle the Rhea automobile, and this, according to Mr. Barker, took a hard blow. (Transcript page.203)
"Having developed through Richard L. Barker that the rear portion of the Rhea car sustained a rather severe impact, and that the rear portion of the Rhea car was still intact and in the same condition as it was at the time of the accident, the Attorney for Maryland Casualty Company (Transcript of Record 212) expressed a desire to have the car inspected and viewed by the Court. Mr. Barker agreed to hold the car intact, but the record fails to show that this examination was ever made. It must be presumed that an inspection and view of same would have been detrimental to the position of defendants, Hebert and Maryland Casualty Company. It is the jurisprudence that the failure to call a witness who is conversant with the point at issue when available gives a presumption that the evidence of said witness would be unfavorable to the one who failed to produce the witness (Lannes v. Escousse [La.App.], 179 So. 106), and this we believe, would apply in this situation in reference to the Rhea car.
"While we believe that Hebert was actually driving too near to the rear of the Rhea automobile to have avoided the accident, and while we are convinced that he was going at a rapid rate of speed when he struck the Rhea automobile, nevertheless, he and the two gentlemen occupying his car have testified that he had his automobile under such control that he had slowed down to between fifteen and twenty miles per hour.
"If Mr. Hebert did have his car under such good control, then it is difficult for us to understand why he did not pull his car off on to the right shoulder on his side of the highway, because it was very broad, at least twenty or twenty-five feet wide. It was a good flat shoulder with very little dip, and as he testified, he was well acquainted with that vicinity and knew that the pecan trees were all on his shoulder of the road and knew the condition of the highway. Assuming that he did know this vicinity, as he said he did, then he should have also known that this shoulder would have been safe for him to have driven upon. If his testimony is correct as to his control of his car and as to his knowledge of the area where this accident occurred, we hold that he could have avoided this accident by driving on the shoulder and thus avoiding this entire accident, and that as to him and these set of circumstances, the doctrine of the last clear chance to avoid the accident applied.
"This application of the doctrine of the last clear chance is one in which we would not indulge were it not for the testimony of Hebert.
"In view of what we have found and stated, we, therefore, must conclude that Mr. Hebert was negligent, and that his negligence was a contributing factor to the accident and resulting damages."
The trial judge erred, we think, in finding Hebert guilty of negligence under the facts presented here. The uncontradicted testimony shows that he had followed the Rhea automobile from five to ten miles without mishap. According to Mr. Brooks, who was a passenger in Hebert's car, they were 150 to 200 feet from Rhea at the time of the head-on collision with Daigle. At the *651 scene of the accident Hebert pointed out on the ground the location of his car at that time and it was measured to be 193 feet from the point of collision between the other two cars. It is also shown that he applied his brakes immediately upon observing the collision ahead of him.
The record clearly shows that the Rhea and Daigle automobiles came to a complete and sudden stop upon their collision. Under these circumstances, we think the ruling of the trial judge places upon Hebert a degree of care which is more strict than that required by our law and jurisprudence. Indeed, in the case of McDaniel v. Capitol Transport Co., La.App., 35 So.2d 38, relied on by the trial judge, which cited Hill v. Knight, La.App., 163 So. 727 quoted from Blashfield's Cyclopedia of Automobile Law as follows:
"The only rule that can govern the interval to be maintained is that of reasonable care under the circumstances. The mere fact that a vehicle is moving in close proximity to a moving vehicle ahead and keeping up with it does not of itself constitute negligence. In determining whether or not a driver was negligent in not maintaining a proper distance between his automobile and the one preceding him, the speed at which he was traveling, the condition of the road, the amount of traffic, the condition of his brakes, and his ability, acting with ordinary care, to stop his car if required to do so by a situation not produced by another's negligence should be considered." (Emphasis supplied.)
The facts in the McDaniel case show that the following vehicle was travelling fifty feet behind the lead car at a speed of thirty to thirty-five miles per hour; that it was raining and the pavement was slippery; that the lead car had reduced its speed to approximately five miles an hour in order to bring it to a stop in view of the fact that the driver of the lead car had noticed some cattle crossing the highway. Certainly the facts of that case are different from the facts in the instant case.
The other case of Lynch v. Fisher, La. App., 34 So.2d 513, which the lower court relied upon is not opposite to the facts in the instant case. That was a case where a motorist ran into a parked truck on the highway at night and certainly the general rule requiring the driver of an automobile to have his vehicle under such control as to be able to bring it to a complete stop within range of his vision or the penetration of his lights when confronted by an obstruction or danger, was applicable.
Also controlling here is the case of Reeves v. Caillouet, La.App., 46 So.2d 373, wherein the court quoted with approval from Adams v. Morgan, La.App., 173 So. 540, which laid down the following rule:
"The best and safest rule which it seems possible for the governing authorities and the courts to have formulated is the one which requires the driver of the car following another to maintain such speed and such distance from the lead car as to be able to meet the usual and ordinary movements of a car using the highway. Such in effect is the provision in our State Highway Regulatory Act, Rule 8(a) Section 3, Act No. 21 of 1932. Whilst he is expected to be prudent in following another, the driver of the car in the rear can anticipate a reasonable observance of the rules of the road and of driving, by the driver of the car ahead of him. The rule is thus tersely and appropriately stated in the recent publication, American Jurisprudence, Vol. 5, p. 656, § 280:
"`The general rule that drivers of automobiles on public highways or the streets of municipalities must exercise reasonable care in the operation of their vehicles, that is, such care as a person of ordinary prudence would exercise under the same or similar circumstances, governs the reciprocal rights and duties of the drivers of cars proceeding in the same direction. The driver must keep a safe distance behind a vehicle ahead and must have his machine well in hand to avoid injury to *652 the car ahead so long as the car ahead is being driven in accordance with the law of the road.'

"Blashfield, in his Cyclopedia of Automobile Law and Practice (Permanent Ed.) Vol. 2 p. 107, 931, lays down a rule much to same effect. According to the statement therein made, it is the duty of the driver in the rear to have his car under such control as not to interfere with the free use of the road `in any lawful manner' by the driver of the car ahead."
In the case of Stevenson v. Campbell, 17 La.App. 142, 134 So. 718, we find where the Second Circuit Court of Appeal of this State, held that no driver is required to be on guard for unusual situations that might suddenly and unexpectedly arise. This case is likewise reported in 104 A.L.R. p. 488. That case involved a three car accident wherein the following vehicle was absolved of negligence, due to the sudden and unexpected occurrence.
We likewise find in 104 A.L.R. at page 500, the following:
"However, it has also been held that the driver of a trailing car is not required to adhere to the rule that he must be able to stop it within his clear range of vision, in instances where hazards arise that could not have been anticipated. Rankin v. Nash-Texas Co., Tex.Civ.App.1934, 73 S.W.2d 680. In this case, although the court stated: `In trailing other automobiles, a motorist must govern his speed or keep back a reasonably safe distance so as to provide for the contingency of the automobile in front suddenly stopping or decreasing its speed, so that he can stop or decrease his speed to avoid a collision, or can turn out safely to pass the vehicle in front. One cannot run down a vehicle proceeding in the same direction without having been guilty of some negligence in the operation of his own, unless it appears that the collision was due to the contributory negligence of the driver of the other vehicle. The collision, under ordinary circumstances, furnishes some evidence of negligent acts of omissions on the part of the driver of the trailing vehicle which ordinarily calls upon the driver of the rear vehicle to explain, and usually presents a question of fact for the determination of the jury,' it held that where a motorist ran into the rear of another car when it was suddenly stopped because of the sudden and abrupt appearance of another automobile backing into its path, such a situation did not `present an ordinary circumstance of the front car stopping as to raise a presumptive issue of negligence of the operator of the rear vehicle.' It was further held that the doctrine of res ipsa loquitur had no application where the record was silent as to any specific acts of negligence on the part of the rear motorist.
"Similarly, in Cook Paint & Varnish Co. v. Hickling, 8 Cir., 1935, 76 F.2d 718, where defendant's truck came to an abrupt stop because of a mechanical breakdown, without any warning to the driver of the vehicle in the rear, it was held that the overtaking motorist, who was injured when his car collided with the truck ahead, could not be required to exercise the care of an ordinarily prudent person when confronted with an emergency, nor expected to adopt the wisest choice in his endeavor to avoid colliding with the vehicle ahead, and therefore could not be held guilty of contributory negligence in failing to stop within `the assured clear distance ahead.'"
We find from the facts established in the record that the Hebert car followed the Rhea car for several miles at the same speed of approximately 50 to 60 miles per hour. The road was dry, there was no fog and the night was clear, and at the time of the collision Hebert was approximately 193 feet in the back of the Rhea car. There were no abnormal traffic conditions on the highway, other than the sudden incident that caused the collision between Rhea and *653 Daigle. The lead car (Rhea) came to a sudden stop as the result of a sudden and unexpected collision with the Daigle car. We are therefore of the opinion that the facts as presented in the instant case is an exception to the general rule, which requires the driver of an automobile to have his vehicle under such control as to be able to bring it to a complete stop within range of his vision or the penetration of the lights when confronted by any obstruction or danger.
We believe under the above quoted expressions that while the driver of the following vehicle is charged with driving so as to have his car under control to avoid foreseeable dangers and emergencies he is not to be charged with anticipating an emergency such as presented itself here. The first collision was, to use the words of counsel, "tantamount to having a steel curtain suddenly dropped before Hebert on the highway". Under these circumstances, we cannot find Hebert negligent in conducting himself as he did.
For the reasons assigned the judgment appealed from is reversed insofar as Edgar J. Hebert and the Maryland Casualty Company are concerned and the plaintiffs' suit against them dismissed. As Robert Daigle and Gaston Daigle have made no appearance in this court, the judgment against them cannot be modified and same stands affirmed.
Judgment amended and as amended affirmed.