ELLIS, Justice.
At about nine o’clock A.M. on April 28, 1949 one Demaret, an employee of the Gulf, Research & .Development Co., was driving its • 1941 model Studebaker automobile east along U. S. Highway 190 at approximately 50 miles an hour and following behind him was a Ford Sedan owned by Woodward Wight & Co., Ltd., and operated by its employee, Jack Herbert, and immediately behind this car, proceeding in the same di *897 rection, was a Ford pick-up truck owned by the Gulf Research and Development Company and being operated by its employee, John L. Jennings. When these automobiles were within two or three miles east of Er-winville, Louisiana, one L. L. Drown, Jr., an employee of the Douglas Public Service Corporation, was operating the latter’s Oldsmobile automobile in a westerly direction and thus approaching the three firstly described motor vehicles when the Oldsmobile pulled out into the east bound lane of the highway in order to pass a large truck. Upon being unable to pass this truck without a head-on collision with the Studebaker automobile, Drown pulled to the south and avoided the collision by approximately 15 or 20 feet, went down the embankment and off the highway. The driver of the Studebaker automobile, believing a head-on collision was imminent, put on his brakes. The following driver of the Ford automobile owned by Woodward Wight Company, put on his brakes in an attempt to avoid striking the Studebaker from the rear. He did strike the Studebaker and in turn was himself struck by the Ford pick-up truck to his rear.
Plaintiff Woodward Wight & Co. has thus filed this suit as a result of the accident against the Douglas Public Service Corporation, the owner of the Oldsmobile, and Gulf Research and Development Company, owner of the Studebaker and Ford pick-up truck, for damages to its automobile in the amount of $827.43.
The case was duly tried and the driver of the Studebaker automobile as well as the driver of the Woodward Wight Company Ford automobile were exonerated from any negligence and judgment was rendered in favor of the plaintiff and against the Gulf Research & Development Company for the negligence of Jennings, the driver of the Ford pick-up truck, and against the Douglas Public Service Corporation for the negligence of Drown, the driver of the Oldsmobile automobile which allegedly created the emergency, in the amount of $389.45 together with legal interest and all costs.
From this judgment the plaintiff has appealed as it is dissatisfied with the amount and asks that it be increased to the amount prayed for, and all other defendants have answered the appeal asking that the judgment be reversed.
The main facts in this case are not seriously disputed, for it is practically admitted and proven that the Oldsmobile’s traveling west pulled out to pass a large truck in front of it, and being unable to do so and faced with the head-on collision with the Studebaker automobile traveling in an easterly direction, the driver of the Oldsmobile narrowly avoided the accident by approximately 15 feet when he deliberately drove his car off of the highway and down the embankment of the south or left hand side. Naturally, the driver of the Studebaker did not wait before applying his brakes to see if the Oldsmobile would make such a maneuver, and neither did the following cars, according to the testimony. The driver of the plaintiff’s car applied his brakes and the driver of the pick-up truck, Jennings, did the same.
Counsel for the defendant Douglas Public Service Corporation, in his brief concedes that the first question to be put before the Court is the negligence vel non of Drown, driver of the Oldsmobile owned by Douglas Public Service Corporation, and if it should be determined that Drown was guilty of negligence, then was Drown’s negligence a proximate cause of the damage sustained by plaintiff's vehicle. Counsel further admits that unexplained the negligence on the part of Drown can be inferred because, he was driving on his wrong side of the road under traffic circumstances which made it impossible for him to return to' his proper traffic lane. Counsel then .argues that Drown, finding himself in this perilous situation, in- protection of his own safety and of oncoming traffic, left the highway to his left, thereby clearing the traffic lane for Demaret’s Studebaker, ánd, therefore, this action on the part; of Drown exonerates him from any negligence that was a- proximate cause of the damage -sustained by plaintiff’s .ve- *898 hide in coming in contact with the two Gulf vehicles.
We thoroughly agree that Drown was guilty of gross negligence- and as thoroughly disagree that his action in leaving the highway, thereby clearing the traffic lane for the Studebaker, exonerated him from any negligence. Upon the admitted facts Drown was guilty of negligence and created an emergency, and when he left the highway he did not exonerate himself as the negligent act which was the proximate cause of the damage sustained by the plaintiff’s vehicle had already been committed.' The only result of his leaving the highway was that he exonerated himself from possible greater damage which would certainly have occurred had he run head on into the Studebaker.
This Court has just recently had occasion to consider a .case involving the creation of an emergency by a car traveling in one direction crossing the center line and colliding with a car traveling in its opposite direction, and a following car, by reason of the emergency, crashing into the rear of the car ahead. This was the case of Rhea v. Daigle, La.App., 72 So.2d 643, 651. In that case we said:
“Also controlling here is the case of Reeves v. Caillouet, La.App., 46 So. 373, wherein the court quoted with approval from Adams v. Morgan, La.App., 173 So. 540, which laid down . the following rule:
“ ‘The best and safest rule which it seems possible for the governing authorities and the courts to have formulated is the one which requires the driver of the car following - another to-maintain such speed" and such distance from the lead car as to be able to-meet the usual and ordinary movements. of: a -car using the highway.Such in effect -is the provision in our State Highway Regulatory Act, Rule 8(a) Section ,3, Act No. 21 of T932. Whilst -he is expected to be prudent in following-another, the driver . of • the" car in the. rear can anticipate- a reasonable observance of the rules of the road and of driving, by the driver of the car ahead of him. The rule is thus tersely and appropriately stated in the recent publication, American Jurisprudence, Vol. 5, p. 656, § 280:
“ ‘ “The general rule that drivers of -automobiles on public highways or the streets of municipalities must exercise reasonable care in the operation of their vehicles, that is, such care as a person of ordinary prudence would exercise under the same ■ or similar circumstances, governs the reciprocal rights and duties of the .drivers of cars proceeding in the same direction. The driver must keep a safe distance behind a vehicle ahead and must have his machine well in hand to avoid injury to the car ahead so long as the car ahead is being driven in accordance with the law of the road.’
“ ‘Blashfield in his Cyclopedia of Automobile Law and Practice (Permanent Ed.) Vol. 2, p. 107, 931, lays down a rule much to same effect. According to the statement therein made, it is the duty of the driver in the rear to have his car under such control as not to interfere with the free use of the road' “in any lawful manner” by the driver of the car ahead.’
“In the case of Stevenson v. Campbell, 17 La.App. 142, 134 So. 718, we find where the .Second Circuit Court of. Appeal of this State, held that no driver is required to be on guard for unusu- • al situations that might suddenly arid unexpectedly arise. This case is likewise reported' in 104 A.L.R.. p. 488. That case involved a three car accident wherein the following vehicle was absolved of negligence, due" to the sudden .and unexpected occurrence.”: ■
The District Court found Jennings, the driver of the Ford pick-rip truck, guilty of negligence in- that he was rinable to stop" withiri 150 -feet -and “did not see ahead-what he could 'and would -have seen if he-had been -keeping .á propér lookout.” • The' District Court based "these findirigs upon the' fact that Jennings testified he was travel *899 ing 200 feet behind the Studebaker automobile and that just before the collision the plaintiff’s Ford car passed the pickup truck and got between it and the leading Studebaker car, and that Jennings testified that he struck the Ford car when it was within about 25 feet of the Studebaker, and the Court then reasoned that he had at least 150 feet taking into consideration the 200 feet distance between the Studebaker and the Ford pick-up truck, in which he could have stopped but failed to do so and the Court further stated in its written reasons that although Jennings testified he did not see the Oldsmobile pull out in order to pass the truck, thus creating the emergency, he should have seen it, and he was therefore not keeping a proper lookout. The Court was in error in both of its findings for Jennings testified that he was traveling 200 feet behind the Studebaker at 55 or 60 miles an hour and had been doing so for quite a distance when the plaintiff’s car passed and came between him and the Studebaker, and when it got about 50 feet distance he saw the brake lights flash on the plaintiff’s car. He then applied his brakes and tried to pull to the right but plaintiff’s car was also attempting to pull somewhat to the right. It is admitted that the plaintiff’s car struck the rear of the Studebaker but not with as great a force as plaintiff’s car was struck by the pick-up truck.
It would therefore appear that plaintiff’s car and the defendant’s pick-up truck trav-elled approximately the same distance before the collision. If there was 200 feet between the Studebaker and the Ford pick-up truck, and the plaintiff’s car was 50 feet in front of the truck, then assuming that they brought their cars to a stop within approximately the same time and all were originally traveling at the same speed, then the plaintiff’s car travelled approximately 150 feet until it struck the Studebaker, and the pick-up truck trav-elled approximately 200 feet until it. struck the plaintiff’s car. Allowing for the reaction time necessary to apply the brakes, there would be very little difference in the actions of plaintiff’s driver and defendant’s driver of the Ford pick-up truck. If Jennings the driver of the Ford pick-up truck was guilty of negligence because he was unable to stop - within 150 feet, then by the same token the driver of plaintiff’s car should be convicted of negligence for being unable to stop within 125 to 150 feet. The driver of plaintiff’s car testified that he had passed the pick-up truck 20 to 30 seconds and some three fourths of a mile prior to the accident. On this point there is no testimony or physical fact -which would allow the Court to say positively that the plaintiff’s driver was correct or that Jennings, the driver of the pick-up truck was correct, however, under the rule that the burden of proof is borne by the plaintiff, we are more or less forced to accept Jennings’ version. While we do not think it makes any material difference as to which version we accept, clearly under Jennings’ version the fact that he was within 50 feet of the rear - of plaintiff’s car was through no fault on his part. He applied his brakes as soon as he saw the driver of plaintiff’s Ford car had applied his.
The second ground given by the District Court that he was not keeping a proper lookout and should have seen the Oldsmobile when it attempted to pass the truck is not borne out by the record. The Ford pick-up track was the third car in line and it is ■ easy to understand why its driver did not see the Oldsmobile pull out to pass the truck, and due to the fact that the plaintiff’s car was between it and the Studebaker, he did not notice the Studebaker pull to its right and apply its brakes. This entire accident was caused by the gross negligence of the driver of the Oldsmobile in creating the emergency, and under the facts and the law the driver of the pick-up track was not negligent.
Counsel for plaintiff in his brief gives a fair statement of the facts which exonerate all involved in the collision except the driver of the Oldsmobile. He has the following to say:
“Although there are a few minor discrepancies in the testimony of the . three witnesses above outlined, the main particulars are stated in substantially the same *900 manner by all of the witnesses. Quite dearly, the east-bound vehicles (the Studebaker, the Ford and the pick up truck) were proceeding in a normal manner at a reasonable rate of speed when suddenly and through no fault of their own, they were presented with an extremely dangerous situation due to the Oldsmobile pulling out of the opposing lane of traffic and attempting to pass when there was no 1 room to do so. All three of these east bound vehicles attempted to take evasive action and to stop in the brief seconds that •they had available. Under the circumstances, it is most fortunate — and unexpectedly so — that no personal injuries were sustained by anyone, and only the Ford "owned by petitioner was damaged more " than a very negligible amount. Quite obviously, these' circumstances were precipitated by the grossly reckless conduct of Drown in attempting to pass the truck áhead of him when in the immediate proximity of the Studebaker approaching him from the opposite direction.
“There can be no doubt that Drown, the driver of the Oldsmobile, was guilty of the grossest kind of negligence. His conduct was squarely in violation of the provisions of [LSA-] R.S. 32:233 C:
“The driver of a vehicle, shall not drive to the left side of the centerline of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to .be made in perfect safety. Whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking of passing.’ ”
Counsel for plaintiff argues in his brief that Jennings )yas negligent for his failure to sooner bring his truck under control by applying his brakes and for not seeing the Oldsmobile' until after the accident nor seeing the Studebaker apply its brakes and •pull to the right hand side of‘the road. He cites in support of his' position the case of Arnold v. Griffith, La.App., 192 So. 761. The latter case is not controlling as it was appealed from a judgment of the District Court sustaining exceptions which of course were considered upon the allegations as contained in the plaintiff’s petition. The allegations appellee made in the petition in that case were not proven to ‘ be true according to the facts in the present case. In order for Jennings to be exonerated' of any negligence it was not necessary that he see or know that the Oldsmobile had pulled out to pass the truck and was unable to do so. The driver of plaintiff’s car saw the Oldsmobile pull out in an attempt to pass the truck and yet he struck the Studebaker car in front of him, and yet he could not be found guilty of any contributory negligence or, in fact, any negligence. The emergency which Jennings acted upon was created by the driver of the plaintiff’s car when he applied his brakes as a result of the emergency he was faced with, which had been created by Drown, the driver of the Oldsmobile.
The preponderance of the testimony is to the effect that this entire accident happened or came about almost in an instant. Under the established jurisprudence as shown by the cited case, Jennings-was proceeding in a prudent manner and could 'have met any usual or ordinary movements of plaintiff’s car in front of him. This entire accident was caused by the negligence of the driver of the Oldsmobile which was the sole and proximate cause and hence the Douglas Public Service Corporation was alone responsible.
Plaintiff has appealed on the question of quantum, contending that it should have been awarded a judgment of $827.43. It is shown by the testimony that plaintiff had two estimates of repair costs made by two dealers in Opelousas, and the lowest estimate was the amount prayed for, which was identified and offéred in evidence. The facts reveal that after the estimates were made, the • car was not actually repaired but was traded in on -a new- car and the trade-in allowance was $682.11. It was further shown that plaintiff’s ‘ Ford was about seven months old *901 and had been driven approximately 20,000 miles, ancl in the normal course of the events plaintiff would probably have traded it in when it had been driven approximately 45,000 miles and at which time it would have been fourteen to fifteen months old. The cost of the car originally was $1,927 and it was in good mechanical condition at the time of the accident.
Based upon the above1 facts, the trial judge computed the amount of damages in the following manner: since the car would have been used for 45,000 miles total in the normal course of events, and had been driven about 20,000 miles at the time of the accident, it had supposedly depreciated ■%ths of its original value or cost which was $1,927. The alleged depreciation figure thus computed amounted to $856.44, and the Court then deducted this figure from the original cost of the car to arrive at an evaluation of $1,070.56 as of the time of the accident. The Court then deducted the amount received for the wrecked vehicle in the trade-in of $682, leaving the sum of $389.45 for which plaintiff was awarded judgment.
Counsel for plaintiff argues and we agree with him that the fundamental error is in the assumption that the trade-in value of the vehicle at an age of 14 or 15 months and after it had achieved a mileage of 45,000 would be absolutely valueless. Furthermore, there is nothing in the record by which one could presume that this seven months old car had depreciated almost one-half of its original cost and value. As a matter of fact, the statement of counsel for plaintiff in his brief is correct that “although such a method of computation was neither pleaded or urged, or even mentioned, by any of the defendants, the trial judge computed the amount of damages,” in the manner above outlined. Plaintiff has proven his damages of $827.43 and is entitled to judgment for that amount.
It is therefore ordered that the judgment of the District'Court be reversed insofar as the defendant Gulf Research & .Development Co. is concerned and that there be judgment'in favor of the Gulf Research & Development Co. dismissing plaintiff’s suit at its costs.'
It is further ordered that; the judgment of the District Court be amended by increasing the award to plaintiff from $389.45 to $827.43 and as amended is affirmed.