Plaintiff, a guest passenger in the automobile of Miss Clio Allen, was seriously and painfully injured when the car collided with the east (left) concrete railing of a highway bridge near the Village of LeBeau, in the Parish of St. Landry, the early part of the night of March 29, 1939. Miss Allen was driving the car when the accident occurred. She and plaintiff were its only occupants.
This suit was instituted against Miss Allen and her insurer, Metropolitan Casualty Insurance Company, to recover the damages sustained by plaintiff in and as a result of the accident. She simply alleges that Miss Allen "carelessly and negligently ran the automobile head-on into the concrete railing * * * of the bridge", and that her injuries were "caused solely and entirely by the gross negligence, carelessness and want of skill on the part of said Miss Clio Allen." No effort was made to require plaintiff to amplify these allegations (legal conclusions) by the giving of particulars of fact serving as their basis.
Defendants deny that the accident was due to any negligence, carelessness or lack of skill on Miss Allen's part. They aver that the Allen car was at the time of the accident in good mechanical condition; that it was being driven at a speed of about forty miles per hour, which, in view of conditions and circumstances then prevailing, was a reasonable rate of speed; that the operator was keeping a proper lookout for traffic, etc., ahead of her and had the car under perfect control. They further aver that the accident was unavoidable and happened in this manner:
That as the car was traveling at the speed aforesaid on a straight section of road and when not over one hundred feet from said bridge, a herd of goats suddenly came upon the highway from the right shoulder and berm between the car and the *Page 907 
bridge; that neither Miss Allen nor plaintiff observed the presence of the goats until they entered the highway; that in the emergency thus created, Miss Allen removed her foot from the accelerator to cut off the gas feed and applied the brakes forcibly, which action caused the car to skid and zig-zag on the road, at the time wet from rainfall; that in her efforts to right the car and avoid running into the ditch on the left side of the highway, the car collided with said bridge; that in the circumstances, with no time to deliberate, she had to act quickly, and in so acting she breached no duty due by her to plaintiff and was, therefore, guilty of no negligence as regards plaintiff, her guest.
Plaintiff's demand was rejected by the lower court and she brings appeal.
Plaintiff and Miss Allen at the time of this accident were living in the City of Natchitoches, Louisiana. They left there about three o'clock P.M. enroute to Baton Rouge. Night overtook them several miles north of the locus of the accident, at which time the car's headlights were turned on.
Plaintiff, as a witness, professed total ignorance of the facts of the accident. For reasons not easily understood she could not recall how nor why it happened, nor did she see the goats on the highway. She would not say they were not there. She admitted that Miss Allen had been traveling at a reasonable rate of speed on the trip, such as to meet her approval. She also admitted that she had ridden with her many times prior to the accident, had done so since it happened, and that their former intimate friendship had to no extent been marred by the accident. She is now a teacher in the Bolton High School of Alexandria, Louisiana.
Miss Allen's testimony supports the allegations of the joint answer. She testified that she invited plaintiff to accompany her on the trip to Baton Rouge; that night overtook them before reaching LeBeau and that the headlights of the car were turned on prior to the time the accident occurred; that it had been raining during the afternoon and she had traveled at the rate of fifty miles per hour until nightfall, and at forty miles per hour thereafter, at which rate she was traveling immediately prior to the emergency causing the accident; that when within less than one hundred feet of the bridge "some goats suddenly swarmed on the highway", coming from the shoulder and berm on the right side, which excited her very much; that the goats were not seen by her prior to that time; that the ditches on either side of the road were deep and filled with water; that she "slammed" on her brakes and removed her foot from the accelerator in the hope of averting a collision with the goats; that the car first swerved to the right and then to the left and "in an effort to keep it from going into the ditch on the left, I pulled it back to the left (right) and ran into the bridge"; that she feared being drowned if the car went into the ditch. She was asked, "Did you use your best judgment and best thought to avoid the accident?" to which she replied, "I certainly did. I think you react to a thing like that without using judgment. I had my own life as well as Dorothy's at stake." She also testified that the brakes on her car had been tested as to their efficiency the day before and were in good order.
In the absence of any testimony to the contrary, that given by Miss Allen should be accepted as true. It has the ring of truth to it. No reason whatever can be assigned for her to distort the facts. She is well protected by insurance against any pecuniary liability that could arise in this case and is very friendly with plaintiff.
Under the undisputed facts of the case it cannot be said that Miss Allen was guilty of any negligence in connection with the accident nor that she failed in her duty toward plaintiff, her guest.
The duty of a host motorist to his guest as regards the operation of the car, is to exercise reasonable and ordinary care for the guest's safety and to do nothing that will increase the normal, ordinary and usual dangers incident to such travel. In no sense of the word is the host the insurer of the safety of the guest. The jurisprudence of this state is replete with cases which support these legal principles.
In this case the host motorist was driving at a reasonable rate of speed on a standard concrete highway eighteen feet wide. The road was straight for a long distance on each side of the bridge. There was no traffic in either direction to affect the situation. The sudden appearance of the goats changed the scene. To run into and over them could have produced serious consequences. In these circumstances the operator had to act quickly. She attempted to do that which any reasonable person would have tried to do in a like situation, to-wit: *Page 908 
Stop the car or reduce its speed so materially that the goats would not be run into. She succeeded in escaping a collision with the goats and all would have been well had the car not skidded. In her effort to avert running off of the highway and probably overturning in the water filled ditch, she made it possible for the collision to happen. She faced a dilemma and had to act instantaneously. Even though it be conceded that she chose the wrong course, a question not at all destitute of serious doubt, she cannot be convicted of negligence or carelessness for having done what any other person in like circumstances would have done. Pertinent to this discussion, Blashfield Volume 4, Perm.Ed., § 2339, has this to say:
"Neither the sudden application of the brakes nor the accompanying or consequent skidding of the automobile, standing alone, is sufficient to constitute negligence to a guest, so as to authorize a recovery by him on the ground of the driver's failure to exercise ordinary care, but they are both of them material and significant facts proper to be considered, in connection with the other evidence, in determining the question of liability.
"Application of the brakes in an effort to avoid the dangers presented by a sudden emergency does not stamp the host's conduct as negligent. A fortiori, it is not gross negligence, rendering the host liable where that standard is adopted, to apply the brakes suddenly, even on a wet and slippery road, or while traveling at high speed." Deichmann v. Gerard et al., La. App., 145 So. 30; Penton v. Fisher et al., La.App., 155 So. 35; Rabensteiner v. Aetna Casualty Surety Co. et al., La.App., 181 So. 593.
Plaintiff argues that the doctrine of res ipsa loquitur has application to the facts of this case. Her pleadings indicate a purpose to invoke this legal principle as no detail of facts constituting the negligence charged to Miss Allen is set out. Granting that the doctrine has application, the inference of negligence on Miss Allen's part and the prima facie case made out by plaintiff have been successfully overcome by the testimony adduced in defendants' behalf. In this respect defendants squarely met and discharged the burden of proof cast upon them. Defendants' testimony proves the exact cause of the accident and why it occurred; nothing is left to conjecture or inference on that score.
Plaintiffs also invoke the well established rule of law that a motorist should always maintain a rate of speed that will permit him to stop his vehicle within the distance illumined by its headlights. This rule is not always applicable to emergencies. It ofttimes happens, as in the present case, that the object precipitating the emergency comes suddenly into view of the motorist at a point between the car and the farther side of the illumined section of the highway.
Plaintiff was a patient in a Baton Rouge sanitarium for several weeks following the accident. Of the expenses incurred while while there, Miss Allen voluntarily paid two hundred forty-five ($245) dollars. This payment is urged as a tacit admission of liability for the results of the accident. Beyond the bare fact of this payment the record contains nothing bearing thereon. She and plaintiff have been very good friends for some ten years. Both are teachers. Plaintiff was a student of Miss Allen while in high school. Their ages at time of the accident were forty-one and twenty-one years, respectively. In view of their past relations and having invited plaintiff to accompany her to Baton Rouge, naturally Miss Allen felt an interest in her welfare of a parental nature. She carried her promptly to the sanitarium for treatment and evidently felt that morally she should pay these bills. It is not improbable that she stood good for them from the beginning. At all events, the record does not show that she ever expressly admitted liability of any sort to plaintiff and this payment is not sufficient to charge her with such liability. Payments of this character made out of humane or sentimental considerations standing alone do not amount to admission of liability. Bilich v. Templeman Bros., Inc., La.App., 164 So. 261.
We are of the opinion that the lower court's judgment in this case is well supported by the testimony adduced and the law pertinent thereto; and for this reason the judgment appealed from is affirmed with costs. *Page 909