This is a suit by Ira Dunaway, individually and as the father of Ira Dunaway, Jr., in which he is seeking to recover damages for personal injuries sustained by his minor son as a result of a collision between an automobile owned and operated by G. L. Cade, defendant herein, and a motor bike owned and operated by the minor, Ira Dunaway, Jr.
Plaintiff alleges that his minor son was riding his motor bike on Avenue F, which street runs north and south in the City of Bogalusa, Louisiana, on May 11, 1947 at approximately 1 A.M.; that he was traveling south on said avenue and was following the automobile being operated by the defendant Cade on the same avenue in the same direction.
While plaintiff also sued the Bogalusa Lumber Company, Inc., it was shown that Cade was not acting in the scope of his authority or in the regular course of his business on any mission for the Bogalusa Lumber Company, his employer, and Bogalusa Lumber Company, Inc., having filed an exception of no right of action and testimony being taken thereon, the exception was properly sustained and plaintiff does not complain of this ruling.
Plaintiff's main cause of action is set forth in Articles 7 and 8 of his petition and these articles are as follows:
"VII. That G. L. (Bud) Cade after passing the intersection of Tenth Street with Avenue F continue south on Avenue F in the city limits of the City of Bogalusa, Washington Parish, Louisiana, petitioner's son doing likewise, staying at a reasonable safe distance behind the vehicle driven by the said G. L. (Bud) Cade. After G. L. (Bud) Cade had driven approximately 35' or 50' from the south line of the intersection of Tenth Street with Avenue F, he applied brakes to his vehicle without signal and immediately without warning began to travel in reverse, backing up and upon so doing crashed into and caused petitioner's son to crash into the vehicle as driven by the said G. L. (Bud) Cade." *Page 150 
"VIII. That the said employee of the defendant corporation, Bogalusa Lumber Company, Inc., gave petitioner's son no warning whatsoever of his intention to stop and to reverse the direction of his said vehicle, and by the failure to give warning or signal caused the accident in question severely injuring Ira Dunaway, Jr. and damaging said motor bike."
Plaintiff prays for judgment individually for hospital bills, nursing service, medical service, medicines, etc. and specialist fees in the total amount of $1800.00, and further prays on behalf of his minor son, Ira Dunaway, Jr., for damages in the full sum of $90,000.00.
Defendants first filed an exception of no cause and no right of action on behalf of Bogalusa Lumber Company, Inc. and G. L. Cade. As stated, after the taking of testimony, the exception of no right of action was sustained, as to the Bogalusa Lumber Company, Inc., as Cade was on a mission of his own. The exception filed on behalf of the defendant Cade was overruled by the District Court with written reasons, and we think properly, however there is no need to discuss this ruling as counsel for the defendant Cade have not re-urged same in their brief nor in their argument.
The defendant Cade's answer was a general denial and, in the alternative, defendant plead contributory negligence on the part of Ira Dunaway, Jr. in following the defendant's car at an unsafe and unreasonably close distance; by failing to keep a proper lookout; by operating the motor bike at an excessive rate of speed; by failing to have the motor bike under proper control; by not attempting to avoid the accident by going around the Cade car to the left, the road ahead being open and unobstructed. The defendant Cade also assumed the position of plaintiff in reconvention and prayed for the sum of $87.75, the amount of damage to his automobile as a result of the accident.
The District Judge, in a well considered and written opinion, held that the defendant Cade was guilty of negligence in not giving the hand signal as provided by the provisions of Act No. 286 of 1938, Section 3, Rule 10, Dart's Statutes Section 5215, and also that as the defendant testified that he looked through his rear view mirror but did not see the motor bike, which the Judge found "to have been some twenty-five feet to the rear of him at the time", that he was therefore guilty of negligence in failing to see that which he should have seen, and the Court concluded that this negligence of the defendant was the proximate cause of the accident. The Court further held that Ira Dunaway, Jr. was guilty of contributory negligence in traveling at an excessive rate of speed some twenty-five feet to the rear of the defendant Cade's automobile and that he also failed to keep a proper lookout and failed to have his motor bike under proper control immediately proceeding the accident. For these reasons, the District Court rejected the plaintiff's claim and refused the defendant's claim on the reconventional demand and assessed all costs against the plaintiff.
The plaintiff has appealed from this judgment and the defendant Cade has answered the appeal and asked that it be amended by awarding to him the sum of $87.75 as set forth in his reconventional demand which the Lower Court denied in its judgment, and that in all other respects. the judgment be affirmed.
The record reveals that on May 11, 1947 Ira Dunaway, Jr., had attended a late picture show in the city of Bogalusa, and that about 1 A.M. he was going home, traveling south on Avenue F, and that at this time, also traveling south on Avenue F was the automobile owned and operated by the defendant Cade. Ira Dunaway, Jr. was following Cade's Automobile a distance of approximately 25 feet when Cade's car came to the intersection of Tenth and Avenue F. Cade, immediately after crossing this intersection, began to slow down and the motor bike of young Dunaway ran into the rear of Cade's automobile. As a result of the accident, young Dunaway suffered severe injuries.
The testimony reveals that on the morning in question, the defendant Cade, together with his son-in-law, Mark Endicott, and a friend, Theodore Evans, were going fox hunting. Evans was sitting on the front seat with Cade and Endicott was on the back seat with one of the fox hounds. The other hounds were in the back, closed *Page 151 
up in the trunk of the car. Cade testified that he was traveling south on Avenue F, approximately twenty-five miles per hour, and that just as he crossed the intersection of Tenth Street and Avenue F, one of the men in the car told him that he should have turned on Tenth Street to his right. He immediately began to stop his automobile and when he was approximately fifty to seventy-five feet south of the intersection and practically stopped, although his automobile was still moving, he was struck in the rear by the motor bike of young Dunaway. The pictures of the car introduced in evidence show the blow from the motor bike to have been practically in the rear center of the automobile, possibly slightly to the left of center. From this picture, it would seem that the motor bike struck the car with quite a bit of force, as the trunk is badly bent in and, according to the testimony, the bumper was slightly bent and the motor bike had run up on top of the bumper and mashed the front wheel so that it was jammed between the bumper and automobile. The motor bike was still fastened on to the car after the accident. Young Dunaway was thrown some five or six feet from the motor bike on the shoulder in the gravel.
Defendant Cade testified that he did not recall whether he held his hand out to signal or stop. We agree with the trial judge that "had the defendant given this hand signal he would have remembered it." Cade also testified on cross examination that he had a rear view mirror on his car; that when he started to stop he looked in the mirror but he did not see anything behind him. However, on direct examination Cade contradicted his answer on cross examination in that he testified he did not have occasion to look to the rear of his car as he proceeded down Avenue F, and again on cross examination he was asked the following:
"Q. I believe on direct examination you said you were not looking and had not looked through your rear view mirror. A. No, sir. I had not looked in it." There is no testimony in the record to substantiate the allegation that defendant Cade brought his car to a sudden stop and shifted it into reverse and immediately, without warning, began to travel in reverse. Counsel for defendant Cade contend that even though it be conceded that Cade did not put out his hand, the warning of the stop lights on the Cade car constituted sufficient warning or notice to Dunaway of the intention of Cade to slow down or stop. Counsel rely upon the case of Finance Security Company, Inc. v. Thurman et al., La. App., 9 So.2d 846, and Herbert v. Keller, La. App., 17 So.2d 746.
Evans, one of the occupants of the car, on cross examination was asked whether or not Mr. Cade had a stop light on that car, and he answered, "He had two tail lights." Counsel again asked him, "What about a stop light?" and his answer was, "No, it was not working."
The defendant Cade on cross examination under the Act testified that his car was equipped with a stop light that operated from the brake, and when asked if it was in operation, answered: "I reckon so, I wouldn't be able to see that, of course," and he also testified that he used his brakes in coming to a stop. There were no skid marks made by the automobile on the pavement. Cade also testified that on the night of the accident, both of his head lights and tail lights were on.
Cade's son-in-law, Endicott, testified that after the accident he checked the stop light on the automobile at Mr. Cade's house and that it was working. We are inclined to believe that the stop light was working, as there is no explanation of Evan's testimony to the effect that it was not working. Be this as it may, Cade was not relieved of his duty under the law to give the proper hand signal. In the case of Finance Security Company, Inc. v. Thurman, supra, the Court stated that "The signal given by the application of the brakes should have been a warning sign to the automobile following that Passman intended to make a stop at the intersection. Crane should have seen this signal." [9 So.2d 848] However, the Court does not hold that this relieved the driver of plaintiff's truck from giving the proper hand signal of his intention to stop. The Court specifically held that the driver of plaintiff's truck in this instance was negligent because he did not give a hand signal of *Page 152 
his intention to stop and also that when he looked in the side view mirror he should have seen defendant's car following forty to fifty feet in his rear, and also that plaintiff had brought his car to a stop entirely on the pavement when he should have brought his truck to a stop on the shoulder and not in the lane of travel.
In the case of Hebert v. Keller, supra, the Court found the facts in that case to be that the plaintiff was following another car and that the lead car suddenly stopped and plaintiff thereupon brought his car to a sudden stop, whereupon defendant's car ran into the rear of plaintiff's car. Under these facts, the Court held, with Judge Ott as the organ of the Court, that "the condition of traffic and the circumstances under which young Hebert was required to stop or slow down did not require him to give a hand signal; that the mechanical stop light signal on the rear of the car was all that could be reasonably required of him under the circumstances where it was necessary for him to make an emergency stop not caused by his own acts." [17 So.2d 747]
In the present case, defendant was not confronted with any emergency but voluntarily brought his car to a stop in front of young Dunaway, who was following him at a distance of twenty-five to thirty feet, without giving the proper hand signal. Another reason why we do not believe he gave the hand signal is because the testimony fails to show in any place that Cade knew or even suspected that this motor bike was to his rear, so there would certainly be no reason for Cade to put out his hand if he did not see the motor bike following him or did not know it was following him, unless by force of habit. Counsel for defendant contend that it would have served no purpose for Cade to have given the hand signal as it was night and the motor bike was traveling in the center of its lane of traffic, twenty-five to thirty feet to the rear of the Cade car, and that young Dunaway could not and would not have seen this hand signal. The facts show that it was a bright moonlight night, that this accident occurred where the street was brightly lit up by the street light, and there would have been no reason for young Dunaway not to have seen the hand signal. Also, Cade was negligent for if he looked in his rear view mirror and did not see young Dunaway, he should have seen him, and if he did not look, he should have looked, either in the rear view mirror or in some other manner, prior to stopping his automobile in the lane of traffic on the pavement without any signal except possibly a stop light warning.
For these reasons, we are of the opinion that the judgment of the District Court in holding that the negligence of Cade was a proximate cause of the accident is correct.
We are also of the opinion that the judgment is correct in its holding of young Dunaway guilty of contributory negligence as a proximate cause of the accident. In this case, young Dunaway, as previously stated, was traveling twenty-five to thirty feet behind the Cade car on a bright moonlight night at an intersection that was lighted by a street light, when the car in front of him came to a stop, not suddenly but, as the District Judge says, slightly faster than gradually. We believe that the stop light was working and when Cade applied his brakes, certainly young Dunaway should have seen this signal and should have seen the car in front of him slowing down if he had been keeping a proper lookout. The testimony also shows that the Cade car came to a stop approximately fifty to seventy-five feet south of the intersection with the motor bike fastened on to it; that at a distance of approximately nine feet to the rear of the Cade car there was a pile of dirt on the pavement, showing clearly that it was approximately at this point that young Dunaway's motor bike struck the Cade car. From this point where the dirt was located, there was a brake mark made by the motor bike, approximately six feet in length, which shows that young Dunaway only got his brakes applied when he was within six feet of striking the car. Under these facts, clearly he was not keeping a proper lookout. Also, the speedometer of the motor bike was locked after the wreck at thirty-eight miles per hour. There is some testimony *Page 153 
that it was an English instrument and the reading should have been in kilometers, however, the District Judge in his opinion used the American miles, and we see no reason to differ with him, for this speedometer was in the possession of the plaintiffs and they could have produced it and definitely established which it was, and they did not do so.
We are therefore of the opinion that young Dunaway was also traveling too close at an excessive rate of speed, under the circumstances, behind the Cade car. Young Dunaway, had he been keeping a proper lookout, could have avoided running into the rear end of defendant's car. Under the facts, he did not have his motor bike under proper control immediately preceding the accident.
It is also shown by the record that the north lane of traffic of Avenue F at the time of the accident was open and clear and there was no reason why young Dunaway could not, if he had been keeping a proper lookout and had his motor bike under proper control, gone to the left and around the Cade car.
There is another contention made by counsel for plaintiff which was not raised in the District Court, to the effect that the defendant created an emergency and the plaintiff should be allowed to recover under the emergency doctrine as set forth by this Court in the case of Home Insurance Company v. Warren, La. App., 29 So.2d 551. We see no reason to dwell at length on this contention or cite many authorities, as this doctrine seems to be well settled to the effect that where one is confronted with an emergency and even though his or her choice of escape was not the safest or the wisest, he or she cannot be held guilty of negligence on that score alone, provided the situation was one which was not created in whole or in part by such person.
Counsel for defendant Cade contend that if any sudden emergency existed at all at the time of the accident that this emergency arose or was created as a result of the negligent acts of Ira Dunaway, Jr. in the following respects, to-wit:
"1. By Ira Dunaway, Jr. following the Cade car at too close a distance.
"2. By traveling at too rapid a rate of speed, which the preponderance of the evidence will clearly reveal to be 38 miles per hour at the time of the impact when the speedometer became locked at that speed.
"3. By failing to keep a lookout which would be proper.
"4. By failing to have his motorbike under proper control so as to be able to meet any situation that might arise, and particularly is this true when Ira Dunaway, Jr. admits that he was fully aware of the presence of the car at the time of the accident and had been aware of such presence for quite some time.
"5. By failing to avoid the accident when he could have reasonably done so had he been keeping a proper lookout and had his bike under proper control."
While we doubt that a sudden emergency as recognized by the law was created, if it was, we are of the opinion that young Dunaway at least contributed to the creation of such emergency, for this record shows that he saw the car in front of him and yet he was traveling within twenty-five or thirty feet of it at 38 miles per hour and did not notice the car coming to a fairly gradual stop until he was within approximately six feet of striking the car. If there was any emergency created, then young Dunaway contributed to its creation for all five reasons set forth by counsel for defendant in their brief, and, of course, it is clear that one who creates or contributes to the creation of an emergency is barred from recovery. Vol. 4 Blashfield's Cyclopedia of Automobile Law and Practice, Part 2, § 2733, page 244; McCook v. Rebecca-Fabacher, Inc., La. App.,10 So.2d 512; Stromer v. Dupont, La. App., 150 So. 32; Burnett v. Cockrill et al., La. App., 145 So. 398.
For these reasons the judgment of the District Court is affirmed, the plaintiff to pay all costs. *Page 154