76 So.2d 315 (1954)
Dominic PERANIO et al.
v.
SUPERIOR INSURANCE COMPANY et al.
No. 3889.
Court of Appeal of Louisiana, First Circuit.
November 18, 1954.
Writ of Certiorari Granted February 14, 1955.
*316 Borron, Owen, Borron & Delahaye, Baton Rouge, for appellant.
Spedale & Cooley, Baton Rouge, for appellee.
CAVANAUGH, Judge.
This suit was instituted by the plaintiff Stella G. Peranio to recover damages for personal injuries, pain, suffering and mental anguish suffered by her against the defendants William S. Adkins, a non-resident, and his liability insurer, Superior Insurance Company, in the amount of $7,500, and her husband, Dominic Peranio, claims the expenses incurred by the community in the sum of $363.90.
The petition alleges that on March 24, 1952, at approximately 9:40 a.m., plaintiff Stella G. Peranio was riding as a guest passenger on the front seat of a 1951 Chevrolet automobile owned and being operated by Victor Zito, traveling westwardly along the proper lane for west bound traffic along the Airline Highway, U. S. Highway 71-190, in the Parish of West Baton Rouge and that the automobile in which she was traveling westwardly was one of many automobiles in a funeral procession and that it was traveling at a rate of speed of approximately 30 to 35 miles per hour; that the third or fourth automobile in front of the Chevrolet in which she was riding had a flat tire, came to a stop in the lane of travel, causing the vehicles to the rear to also stop; that the Chevrolet occupied by her had come to a complete stop in the west lane of travel and while so stopped a 1951 Buick sedan, driven by William S. Adkins, and also traveling in the same direction, suddenly and without warning, crashed into the rear of the Chevrolet, causing the injuries and damages sued for; that the driver of the Chevrolet in which she was riding brought the vehicle to a complete stop after having given proper hand and brake light signals; that the collision occurred at a point on said highway about two miles west of "Major's Cafe & Bar" located on the north side of said Airline Highway, which highway at the point where the accident occurred is a concrete highway approximately 20 feet in width and that the impact and collision caused the Chevrolet to suddenly move forward about 8 feet and strike the vehicle immediately in front of the Chevrolet and come to a stop. Plaintiffs by reason of the facts and circumstances hereinabove alluded to invoke the doctrine of res ipsa loquitur to establish liability. Alternatively, the plaintiffs allege that the defendant, William S. Adkins, was guilty of negligence proximately causing the accident in not keeping a proper lookout and in not having his car under proper control; failing to slacken his speed when he saw, or should have seen, the Chevrolet sedan coming to a stop and stopping on said highway; driving at an excessive rate of speed under the circumstances existing at the time, driving too close behind the Chevrolet sedan, driving his car into the rear of the Chevrolet and driving said Buick in a careless and reckless manner. The plaintiffs then alleged the nature and character of the injuries that plaintiff Stella G. Peranio received and itemized the damages sustained by the husband, Dominic Peranio, by reason of the incurring of medical and hospital services as well as expenses incurred in obtaining maid service in his home to do the household work of his wife during the period of her disability on account of the accidental injuries suffered by her resulting from the collision.
The defendants denied that the doctrine of res ipsa loquitur was applicable and categorically denied the specific acts of negligence charged to the defendant Adkins; and affirmatively alleged that the automobile operated by defendant William S. Adkins was proceeding in its proper lane of traffic, at a reasonable rate of speed on the highway when, without warning and without regard to the safety and rights of others traveling on the highway, the car immediately preceding defendant Adkins and being driven by Victor Zito jammed on the brakes of his automobile, bringing it to a sudden stop and with insufficient time for defendant Adkins to stop, thereby resulting in said collision; that the accident and resultant injuries to Stella G. Peranio were due to no fault or negligence, disregard of rights of others, or violation of the State *317 laws or laws of the road on the part of defendant Adkins, but that the proximate and sole cause of said collision was due to the gross negligence and want of care on the part of the said Victor Zito in the acts of commission and omission above set forth.
After trial, the lower court rendered a judgment in favor of plaintiff Stella G. Peranio, and against the defendants in solido in the sum of $2,500, with legal interest from judicial demand, until paid, and rendered a judgment in favor of plaintiff Dominic Peranio, and against the defendants in solido in the sum of $200.90, with legal interest from judicial demand, until paid, together with the costs of the suit.
The defendants have suspensively appealed from the judgment and plaintiffs have answered the appeal asking that the judgment be amended in their favor as set forth in their answer.
By brief and oral argument defendants contend here that the plaintiffs failed to prove any allegation of negligence whatever on the part of defendant Adkins and that the court below erroneously applied the general rule applicable to rear end collisions in automobile cases instead of applying the exception, the emergency rule.
The facts in this case show that the plaintiff Stella G. Peranio was a guest passenger in the Chevrolet automobile being operated by Victor Zito. Plaintiff Stella G. Peranio, Victor Zito and Mrs. Victor Zito and their minor child were all riding in the Chevrolet sedan being operated by Victor Zito and were traveling westerly on Highway 190-71 in a westerly direction from Baton Rouge. They had left the Welsh Funeral Home in the city of Baton Rouge traveling to Maringouin, Louisiana, to attend the funeral of Charles Zito, an uncle of Victor Zito, the driver of the Chevrolet sedan. A patrolman escorted the procession out of town.
The defendant Adkins was enroute from Biloxi, Mississippi to Port Isabelle, Texas, and was driving a 1951 Buick sedan automobile in which was riding his mother.
The defendant called on cross examination testified that he got behind the line of vehicles and first noticed it just after he crossed the Mississippi River bridge at Baton Rouge, and a short time after crossing the bridge, he passed a truck. And within a mile, he tried to go around the procession or string of vehicles and saw that he could not, and finally concluded to get behind them and ride it out. He stated that the automobiles in the line of cars were traveling at a rate of speed of 30 to 35 miles per hour and that he was 40 or 50 feet in the rear of the Chevrolet in which the plaintiff Stella G. Peranio was riding when the rear end collision occurred. That the first thing he noticed was after they had traveled 3 or 4 miles westerly from the time he got behind the line of vehicles, and just preceding the collision, he heard the brakes of the preceding cars being applied and the squeaking of the tires, and that he immediately applied his brakes and that on account of a break or crack in the pavement, the traction of the rear wheels of his car did not take and he slid into the rear end of the Chevrolet automobile ahead of him. That the Chevrolet just ahead of him in the line of cars came to an abrupt stop and as soon as he heard the squeaking of the brakes and tires he applied his brakes and did everything he could do to keep from running into the rear of the Chevrolet automobile. He thought that if it had not been for the break or defect in the pavement he would have been able to have stopped his car before the collision.
Victor Zito, the operator of the Chevrolet sedan in which the plaintiff Stella G. Peranio was riding, testified that the funeral procession of 20 or 30 automobiles had been traveling at a rate of speed of 30 to 35 miles per hour and that the last time he looked in his rear view mirror, he saw a truck following him; that he never knew the defendant's Buick was behind him until after the collision but that it was probably five minutes before the collision happened since he had observed traffic in his rear. He testified that the third or fourth car in the procession ahead of him had a *318 blow out or flat tire, causing the preceding cars ahead of him to come to a stop. That the car just ahead of him in the procession was about 40 feet ahead of him, when he heard the noise of the application of the brakes and the squeaking of the tires and that he immediately applied his brakes; that he did not travel over 10 or 15 feet at the most; that he was trailing the car in front of him at about 40 feet and that all of the cars in the procession had parking lights on; that his brake lights were working and that his brake blinking lights were working; that he did not give any hand signal because he did not have time and the window glass in the car was up. This witness further stated that he did not travel over 10 or 15 feet after he noticed the cars in front of him were about to stop; that the back end, trunk and rear bumper of his car was damaged, and it also had a dent on the left side in the top; and that the grille on the front of the car was bent slightly; that he had come to a complete stop when his car was struck from the rear by the Buick and that the impact knocked his car into the car ahead of him; and that the two cars were about 6 feet apart when they stopped. He didn't know whether the Buick was trying to pass him at the time of the accident. Neither did he know whether there was any oncoming traffic, and that the cars preceding him did not give any kind of signal but that the car just ahead of him had stopped.
On cross examination he was asked what was the first thing that called it to his attention that the cars in front of him were coming to a sudden stop and he stated, "Well, I heard the brakes and tires squeaking and I applied the brakes". That the cars were still moving when he applied the brakes and he stated that after he applied his brakes he traveled 25 or 30 feet and he did not know how far his car traveled after he heard the squeaking but on further cross examination he testified that he stopped his car in about 30 feet after he heard the brakes and that he was probably traveling 40 feet behind the car just ahead of him. He was asked if he had known that if there was a car behind him would he have given a hand signal that he was going to come to a sudden stop, and he stated that he did not think it was possible, because he thought the accident happened so quickly and that he didn't know if he would have had time to have given a hand signal. He didn't know whether the car immediately in front of him struck the car in front of it or not and didn't know whether any of the other cars ahead of him made contact with the one preceding them. On redirect examination, at the leading question of his counsel, he stated that if the cars ahead of him had made contact with each other following the blowout that he would have known about it.
Mrs. Victor Zito, the wife of the driver of the Chevrolet in which one of the plaintiffs was riding, testified that she was riding in the middle of the front seat next to her husband. That Mrs. Peranio, her mother, was sitting on her right, holding her child. She testified that she saw the truck following them but did not know how far back it was before the accident. She stated that the Chevrolet in which she was riding had come to a complete stop before the impact, and that it did not strike the car in front of it before it was struck by the Buick. She also stated that the car in front of the Chevrolet in which she was riding had come to a complete stop. That her mother, Mrs. Peranio, hollered when the cars collided and then passed out. That they took Mrs. Peranio out of the Chevrolet car in which she was riding and that her sister-in-law and mother-in-law took the plaintiff to the doctor. She stated that she got so scared she had no idea how far the Chevrolet traveled after the brakes were applied but that they weren't too close to the car ahead of them. She stated that when defendant bumped them she didn't know whether the car in front had stopped or not but that they didn't hit him until the Adkins car hit the car in which she was riding. She finally testified that she thought the car in front of the Chevrolet had stopped.
*319 Mrs. Stella G. Peranio, the plaintiff, testified that she was riding in the car driven by her son-in-law, Victor Zito, going to the funeral and that they were traveling 30 or 35 miles an hour. She does not know how far they were traveling behind the car just ahead of them. She stated that the Chevrolet in which she was riding had come to a complete stop when it was hit. She also stated that the car in front of them had come to a complete stop before the Chevrolet in which she was riding hit it.
A pre-trial deposition of this witness was taken by defendant about three weeks prior to the trial and at that time she testified when she was asked what happened at the time of the accident she stated, "At the time this fellow ran into us a car about 3 or 4 cars ahead of us had a blowout and when they all put their brakes on, my son-in-law put his on, and this fellow, who I guess by that time he was coming to pass us, he ducked behind one of them while it was open, and he also put on his brakes". Then she was asked and then she stated that she thought the car in which she was riding had stopped about a second when it was run into and then she was asked whether or not the car had come to a dead stop, or just stopping, and to which she replied, "Well, no, I imagine it wasn't what you would call a dead stop, but he was stopped as it was, it was moving slowly and as they all put on their brakes he put his on" and that her son-in-law, Victor Zito, did not have time to give a hand signal. That he was going about 30 or 35 miles when he threw on the brakes and that he traveled 7 or 8 feet after he applied his brakes. She did not know whether the driver just in front of the car in which she was riding gave a hand signal or not prior to the time he put on his brakes. She said she didn't notice. That after the car ran into the car in which she was riding she passed out and did not remember anything until they were trying to get her out of the car to put her in another car to take her to the doctor. That her son-in-law, Victor Zito, and her daughter stayed with the car and she went in the car of Coldwell Bellela and his wife to the doctor.
The district judge in holding the defendant Adkins negligent made this statement in his analysis of the testimony:
"And when the said funeral procession of cars arrived on said highway at a point about 2 miles west of said Major's Bar and Cafe in the Parish of West Baton Rouge, the third or fourth automobile ahead of the said Chevrolet automobile in the said funeral procession had a loud blowout and a flat tire, came to a stop in the lane of travel creating a sudden emergency and causing vehicles following in the rear to come to a stop. And in this connection there is the undisputed testimony of Victor Zito that at this time he was about 40 feet behind the car ahead of him, and, upon hearing the noise from the `brakes and squeaking tires' of the cars in front of him, he applied his brakes promptly and stopped his Chevrolet in about 30 feet without hitting or striking the car ahead of him. Zito further testified without contradiction that when he was forced to stop on the highway as aforesaid he did not have time to and could not use a hand stop signal, but the prompt application of his brake blinking lights, which were working, gave immediate notice of stopping to all cars in the rear. And there is the further unrefuted statement of Zito that he was in a position to know and did not believe that any of the cars ahead of him in said traffic lane had collided or run into the other preceding them. And Adkins, the only witness offered by Defendants as to the said collision, testified that, even though he heard the noise and noticed the cars stopping in the lane of traffic ahead and then and there immediately applied the brakes, he was unable to stop his Buick car from skidding into the rear of said Chevrolet automobile which was forced to stop when the third or fourth automobile in front of said *320 Chevrolet came to a sudden stop on the highway because of a blowout or flat tire causing all vehicles in the rear to come to a stop.
"On an examination of the answer filed herein by Defendants it is noted that Defendants allege `that the proximate and sole cause of said collision was due to the gross negligence and want of care on the part of the said Victor Zito and in the acts of commission and omission hereinabove set forth.' And the so-called acts of commission and omission set forth in said answer consists of the following: `* * * without warning and without regard to the safety and rights of others traveling on said highway the car immediately preceding Adkins, and being driven by Victor Zito, jammed on the brakes of his said automobile thereby bringing it to a sudden stop and with insufficient time for defendant, Adkins, to stop, thereby resulting in said collision.' It is also observed that Defendants' answer contains no allegation showing whether it was necessary for Victor Zito to make an emergency stop not caused by his own acts; or whether there existed no condition or circumstance that made it necessary for Victor Zito to stop his car quickly and without giving the stop hand signal.
"And after the trial of and the taking of all the evidence in this case, Defendants presented to the Court a written original brief which reads inpart as follows:
"Page 9 of brief:`* * * As a matter of fact, had the operator of the Chevrolet in which the plaintiff was riding made a sudden stop as in this case without the emergency created by the blow-out of one of the preceding cars, the defendant would have unquestionably been entitled to recover damages against Victor Zito for negligence in having come to a sudden stop without warning. * * *'
"Page 14 of brief:`* * * It may be that the sudden stoppage of the automobile in which plaintiff was riding was not in itself due to any negligence on the part of the operator, Zito, since he was apparently confronted with an emergency. * * * etc.'
"Now, it is an admitted fact that the stopping of the said Chevrolet automobile was in a sudden emergency created when a third party's car ahead suddenly stopped due to an accident and blocked oncoming traffic, and the stopping of said Chevrolet automobile under such circumstances does not constitute negligence in the eyes of the law and jurisprudence of Louisiana and is not a violation of the law. And, obviously, the law governing a situation where the forward motorist merely voluntarily stops his car on the highway without giving the proper hand signal, in cases where there is no sudden emergency of the character existing herein has no application to this case. The proposition that presents itself herein is rather whether there has been a violation or violations of those laws which require a motorist following other traffic on the highway to drive carefully under the circumstances and conditions then existing on the highway, to be on the lookout, to keep his automobile at a safe distance behind and drive at a rate of speed that will enable him to have full control of his automobile so that he may be able to stop same in a sudden emergency without causing injuries and damages to the motor vehicle and its occupants preceding ahead in the lane of traffic."
The lower court, further in its analysis of the evidence, makes this statement:
"Now, if Adkins had been on the alert and had seen and heard what he testified he did see and hear when the said blowout and stopping of the cars ahead occurred and if Adkins had *321 been driving at a proper rate of speed under the conditions and circumstances then existing and was following at a safe distance behind the Chevrolet Automobile going ahead of him in the same lane of traffic at the time of said sudden emergency and was prepared for any sudden emergency, all as the law requires, it is only reasonable and logical to conclude that he, Adkins, would have been able to have avoided skidding and sliding into the rear of the said Chevrolet Automobile. In this connection it is noted that the driver, Zito, of the said Chevrolet Automobile ahead of the Adkins car did have such control over and was driving said Chevrolet in such a manner that he was able to stop said automobile without hitting the automobile ahead of it in said lane of traffic. And there is the uncontradicted testimony of Victor Zito that he was in a position to know and did not believe that any of the other cars ahead of him in said lane of traffic had run into the automobiles preceding them. Obviously, it appears that whatever the distance Adkins might have been traveling in the rear of the said Chevrolet car was too close and whatever the rate of speed his said Buick automobile was being driven at was excessive, under the conditions and circumstances existing at the time and place stated, because Adkins admitted that he did not have his said Buick automobile under such control that it could be stopped in time to avoid striking or colliding with the rear of said Chevrolet Automobile which was forced to stop when the third or fourth Automobile in front of said Chevrolet came to a sudden stop on the highway because of a flat tire or blowout and caused all of the motor vehicles in the rear thereof to promptly come to a stop in order to avoid colliding with or running into the automobiles preceding them in the same lane of traffic. And it must be remembered that the negligence of the driver following other cars in a line or caravan of motor vehicles is based not only on what he does or fails to do `after his attention is called to the sudden forced stopping' of the automobile ahead of him but is determined also and principally on the manner in which he was driving his following automobile prior to and at the time the emergency occurred which the law charges him to anticipate and be prepared for under circumstances such as existed in this case. In other words, a driver may not operate a car at an excessive rate of speed or too close to the motor vehicle ahead of him which would prevent its reasonable control in a sudden forced emergency and then be permitted to say after the emergency arose that he did all he reasonably could with the means at his command to avoid injury and damage to the car and occupants thereof in the automobile ahead of him. It is reasonable to observe also that when Victor Zito was forced to stop on the highway, he did not have time to and could not give a hand stop signal but with prompt application of his brakes the brake blinking lights immediately gave notice of stopping to all cars in the rear. And the evidence shows that the failure and inability of Victor Zito to give the hand signal had no causal connection with the collision in this case and even Adkins admitted that he was unable to stop his car from skidding into the said Chevrolet automobile even though he promptly heard the noise of and noticed the cars stopping in the lane of traffic ahead and then and there immediately put on and applied his brakes."
We do not find on our analysis of the testimony that there is evidence to support the findings of fact reflected in the above statement by the trial court for the reason as pointed out by the defendants that no witness testified there was a loud blowout of the tire, or that it was heard by the plaintiff or defendant. That defendant Adkins saw the cars moving in the line of traffic coming to a stop before he applied his brakes. None of the evidence *322 shows that the defendant Adkins' attention was called to the emergency by the noise of the blowout of the tire or from the stopping of the cars preceding him except the Chevrolet sedan. It is his, Adkins, testimony that as soon as he heard the noise from the application of the brakes and the squeaking tires he applied his brakes and that he did not see the blinking of the brake light.
It is the testimony of Zito, the owner of the Chevrolet sedan, that the first he knew of the flat tire causing the cars in the caravan to stop was the application of the brakes and the squeaking of the tires of the car ahead of him.
Plaintiffs and defendants have elaborately argued in brief this case and the law applicable to rear end collisions, which has been of material benefit to the Court in reaching a decision. The only question presented from the evidence in the case is whether or not the general rule applying to rear end collisions of automobiles in cases of this kind should be applied or whether the sudden emergency rule should be applied. It was the opinion of the court below that since the Zito car did not create the emergency but had to come to a sudden stop because the third or fourth car in front of it had a flat tire by reason of a blowout, and was able to stop and not collide with the car in front of it, there was no negligence on the part of the driver of the Chevrolet car. And that the defendant Adkins driving the following car should have had his car under proper control and maintained a proper lookout so he could have stopped before the collision. The lower court in its opinion has cited a number of cases decided by this Court as well as the Court of Appeal, Second Circuit, and the Orleans Court of Appeal. Among the cases decided by this Court and relied upon by the trial court are Crow v. Alesi, 55 So.2d 16; Hebert v. Keller, 17 So.2d 746; McDaniel v. Capitol Transport Co., Inc., 35 So.2d 38; Dunaway v. Cade, 39 So.2d 148; Fuld v. Maryland Casualty Co., 178 So. 201; Session v. Kinchen, 178 So. 635; Adams v. Morgan, 173 So. 540. He also cites LSA-R.S. 32:234, the rule governing the operation of a following motor vehicle, which reads:
"A. The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and condition of the highway."
The plaintiff also by brief cites the case of Crow v. Alesi, supra, and Gandy v. Arrant, 50 So.2d 676, decided by our brethren of the Court of Appeal, Second Circuit, to the effect that a driver of the following vehicle must keep a proper lookout and keep his car at an interval between it and the lead car so it can be stopped when an emergency arises. We have read and studied each of the cases cited by the trial court, as well as those cited and relied upon by the plaintiff and which he contends is controlling in our application of the law to the facts in this case. It would serve no useful purpose to analyze the factual situation in each one of them to show that there were circumstances different from what are reflected in the record of the case we have under consideration. We will only refer to a few of the leading cases cited and relied upon to show that the general rule was applied under the facts and circumstances in each particular case, and the court on each occasion rejected the law applicable to the exception for the emergency rule. In the case of Crow v. Alesi, supra, the situation was reversed. Crow was operating the following vehicle and Alesi was operating the truck in the lead position. Crow brought the suit. The evidence in that case unquestionably showed that Alesi signalled that he intended to stop. A mattress had blown off of an oncoming truck and from the time the plaintiff saw, or should have seen, the stopping of defendant's truck he had a distance of more than 200 feet for reaction and stopping time. Furthermore, the evidence showed that Alesi did not apply his brakes and of course there could not have been any sudden stopping without the application of brakes. The plaintiff argues that the facts in the case of Gandy v. Arrant, 50 So.2d 676, are particularly applicable to *323 the facts in this case because there the suit was brought by the lead car against the driver of the following car as it is in the case at bar. The Court held that a driver of a motor vehicle who becomes one link in a line of vehicles must necessarily be on the alert, observing the car ahead and the general traffic situation in front and specifically stated that if the defendant Arrant had been on the alert and observant of traffic conditions ahead, he could and would have observed the stopping of the Livingstone truck which was larger than the following Chevrolet and Nash passenger vehicles. Of course the cars immediately following the Livingstone truck could see the truck when it stopped and the Court held that Arrant had he been keeping a proper lookout ahead would likely have noted the existence of the bridge, the presence of the truck approaching from the opposite direction and surely would have noted the stopping of the beverage truck and the successive stops of the Chevrolet and Nash automobiles and would have had sufficient time to have brought his own vehicle to a stop before crashing into the rear of plaintiff's car. We agree that the general rule of law should have been applied in those cases because, although there was an emergency, the driver of the following automobile did not exercise due care. The holdings in the other cases cited and relied upon are of similar import and it would serve no useful purpose to point out the distinguishing features.
The case we have at hand concerns the question of where there is no controversy that the sudden emergency came into existence and the evidence does not show that the defendant did not do everything he was required to do under the law to prevent the happening of it unless he is to be charged with negligence by reason of the fact that a rear end collision occurred.
We had this same proposition before us in the case of Rhea v. Daigle, La.App., 72 So.2d 643 in which the cases of McDaniel v. Capitol Transport Co., Inc., supra, and Hill v. Knight, La.App., 163 So. 727, were cited; and in which was quoted and from which we quoted extensively, Blashfield's Cyclopedia of Automobile Law:
"The only rule that can govern the interval to be maintained is that of reasonable care under the circumstances. The mere fact that a vehicle is moving in close proximity to a moving vehicle ahead and keeping up with it does not of itself constitute negligence. In determining whether or not a driver was negligent in not maintaining a proper distance between his automobile and the one preceding him, the speed at which he was traveling, the condition of the road, the amount of traffic, the condition of his brakes, and his ability, acting with ordinary care to stop his car if necessary to do so by a situation not produced by another's negligence, should be considered."
And in the case of Reeves v. Caillouet, 46 So.2d 373, we quoted with approval from Adams v. Morgan, La.App., 173 So. 540, 542, which laid down the following rule:
"The best and safest rule which it seems possible for the governing authorities and the courts to have formulated is the one which requires the driver of the car following another to maintain such speed and such distance from the lead car as to be able to meet the usual and ordinary movements of a car using the highway. Such in effect is the provision in our own State Highway Regulatory Act. Rule 8(a) section 3, Act No. 21 of 1932. Whilst he is expected to be prudent in following another, the driver of the car in the rear can anticipate a reasonable observance of the rules of the road and of driving, by the driver of the car ahead of him. The rule is thus tersely and appropriately stated in the recent publication, American Jurisprudence, Vol. 5, p. 656, § 280:
"`The general rule that drivers of automobiles on public highways or the streets of municipalities must exercise reasonable care in the operation of *324 their vehicles, that is, such care as a person of ordinary prudence would exercise under the same or similar circumstances, governs the reciprocal rights and duties of the drivers of cars proceeding in the same direction. The driver must keep a safe distance behind a vehicle ahead and must have his machine well in hand to avoid injury to the car ahead so long as the car ahead is being driven in accordance with the law of the road.'
"Blashfield, in his Cyclopedia of Automobile Law and Practice (Permanent Ed.) Vol. 2, p. 107, § 931, lays down a rule much to same effect. According to the statement therein made, it is the duty of the driver in the rear to have his car under such control as not to interfere with the free use of the road `in any lawful manner,' by the driver of the car ahead." 60 C.J.S., Motor Vehicles, § 323, p. 748.
The evidence contained in this record leaves no doubt in our mind that a sudden emergency was created, which was no making of the defendant, and that had it not been for the crack or break in the pavement the rear wheels of his Buick would have had proper traction, and he would have been able to have stopped his car as soon as he apprehended the danger when he heard the application of the brakes and the squeaking of the tires. The evidence on the whole shows that the sudden emergency rule should be applied to the facts in this case because as far as this record shows neither the driver of the Chevrolet nor of the Buick were negligent. All of the automobiles in the caravan, according to our appreciation of the evidence, were traveling at practically the same rate of speed and maintained the same interval of spacing between each other. The fact that the driver of the Chevrolet car was able to and did stop his Chevrolet before it collided with the car in front of him is not decisive of whether or not the defendant Adkins was negligent in not stopping his car because the Chevrolet car did not have the defect in the highway the Buick had when defendant's brakes were applied. Certainly the driver of the Chevrolet hear the application of the brakes of the car ahead of him before the driver of the Buick following because he was in the lead position.
"In circumstances of sudden peril, two drivers may not act alike in facing an emergency. The law does not require that all people act alike in situations of sudden peril; all that is required is that a person make a choice or take such action `as a person of ordinary prudence placed in such a position might make.' 5 Am.Jur., Automobiles, § 171; Blashfield's Cyclopedia of Automobile Law, § 668; Stafford v. Nelson Bros. [15 La.App. 51], 130 So. 234." Car & General Ins. Corporation v. Cheshire, 5 Cir., 159 F.2d 985, 988.
"EmergenciesWhen one is confronted with a sudden peril requiring instinctive action, he is not, in determining his course of action, held to the exercise of the same degree of care as when he has time for reflection, and, in the event that an automobilist suddenly meets with an emergency which naturally would overpower the judgment of a reasonably prudent and careful driver, so that momentarily he is thereby rendered incapable of deliberate and intelligent action, and as a result injures a third person, he is not negligent, provided he has used due care to avoid meeting such an emergency and, after it arises, he exercises such care as a reasonably prudent and capable driver would use under the unusual circumstances, which is usually for the jury.
"In other words, some allowance must be made for the time required for the requisite mental and physical operations of a motorist in applying his brakes or doing whatever else is necessary when an emergency arises.
"Reasonable care in an emergency does not require that one confronted by it should act at all events, even though he has no time to decide what to do or to think of anything to do.

*325 Thus, that a guest riding in the automobile of another, driven by the latter, does not brace himself against an impending collision or do anything to avert injury therefrom, does not necessarily make him negligent.
"The rule that a motorist is not liable if he uses reasonable care in an emergency has been applied where a motorist's foot slipped when he tried to apply his brakes, where a driver's torn shoe became tangled with the accelerator, where a child suddenly appeared in the path of a motorist, where a driver ahead made a sudden left turn without warning, or made a sudden stop, where a pedestrian was struck by one vehicle and thrown under the wheels of another, where an animal appeared in the path of a motorist, and in other instances where only a fraction of a second or only a few seconds intervened between the appearance of danger and an accident.
"On the other hand, the rule has been held inapplicable where an automobile traveling on an icy street skidded but stayed on his own side of the street, where a drunken pedestrian, who staggered into the path of an automobile, could have been seen had a proper lookout been kept, where a truck driver crossed to the left side of the road to avoid an automobile making a left turn and damaged a parked automobile, where a driver might have anticipated, before applying his brakes, that such application would cause his automobile to skid, and where a motorist committed a negligent act after an emergency was over." Blashfield's Cyclopedia of Automobile Law and Practice, Section 668, page 538.
The court below refused to apply the doctrine of sudden emergency because the emergency was not created by the Chevrolet sedan automobile being driven by Zito with which defendant's Buick collided. It is our view that it is immaterial that the beginning of the emergency was not precipitated by the Zito car. The law is that the emergency must not be created by the act of the party invoking it. Rhea v. Daigle, supra; Aden v. Allen, La. App., 3 So.2d 905. The sudden stopping of the Chevrolet automobile in which Mrs. Peranio was riding was merely one of the links in the chain of causation. Gandy v. Arrant, La.App., 50 So.2d 676; Pacific Fire Insurance Company v. Orgeron, La. App., 8 So.2d 337.
The doctrine of "res ipsa loquitur" is not applicable to a case of this kind when there is direct testimony to show the cause of the accident. The application of the rule depends on the circumstances in each particular case. Dunaway v. Maroun, La.App., 178 So. 710; Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 9, Sections 6043, 6046, 6048, Verbo "Res Ipsa Loquitur".
It is our opinion that the trial judge committed reversible error under the facts contained in the record by applying the general rule applicable to following vehicles when he should have applied the rule of sudden emergency under the facts and circumstances reflected by the record.
For the reasons hereinabove assigned, the judgment of the district court is reversed and judgment is rendered in favor of the defendants, rejecting the plaintiffs' demands, at their costs.
LOTTINGER, Judge (dissenting).
I respectfully dissent from the majority opinion in this case because I believe that the preponderance of the evidence shows that defendants' driver was either traveling too fast under the circumstances or failed to use due care in discovering that the Zito car ahead of him had stopped or was about stopped.
It is my appreciation of the law, as has been stated repeatedly, that it is a "wellrecognized and settled rule that the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what they can see they must see and in *326 legal contemplation they do see; that their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability." Jackson v. Cook, 189 La. 860, 181 So. 195, 197.
The Orleans Court of Appeal in the case of McNulty v. Toye Bros. Yellow Cab Company, 73 So.2d 23, 26 said:
"Courts have come to the realization that traffic conditions of today being what they are, a person operating an automotive vehicle in a line of traffic must be at all times vigilant and alert and must keep a sharp lookout for sudden maneuvers of vehicles ahead and appraise carefully the existing conditions."
I believe that to be good law because the greater amount of traffic, the greater amount of danger, the greater amount of hazard requires a grater amount of vigilance and alertness on the part of the driver of a vehicle.
Pursuing that premise it must be remembered that the facts in this case reveal that there was a caravan of about 30 automobiles in this funeral procession and that defendants' vehicle, even though it was not part and parcel of the funeral procession, it became so by virtue of the fact that it caught up with the procession and was following the last vehicle of said funeral procession. It must be further remembered that defendants' driver Mr. Adkins was a non-resident of this state on his way from Biloxi, Mississippi to his residence at Port Isabelle, Texas. The preponderance of the evidence shows that all of the vehicles of the caravan were going about 30 to 35 miles per hour and that they were all about 40 to 50 feet apart. Defendants' driver states that he was making approximately the same speed and was approximately the same distance in the back of the Zito automobile. Mr. Adkins states that, "I was traveling at the same rate of speed they were, and I understood that they were going 30 to 35 miles per hour." It is further to be remembered that it was the third or fourth car in front of Zito's automobile that had the blowout and it is certainly reasonable to assume that the said car that had the blowout did not stop instantly at the time of the blowout but proceeded rolling for some distance. It was then that the cars following the blowout automobile put on their respective brakes and stopped. The preponderance of the evidence in this record, and the Lower Court so held, is to the effect that the Zito car as well as the car immediately in front of it had come to a stop before the Adkins automobile ran into the rear of the Zito car. The record further shows that the Zito car came to a stop without striking the car immediately in front of it and that it was only the striking or the running into of the Zito car by the Adkins car which caused the Zito car to strike the car in front of it. The driver of the Zito car, that is Mr. Victor Zito, the car in which plaintiff was riding, states definitely that when he heard the squeak of the brakes he immediately applied his brakes and had come to a complete stop without hitting the car in front of him before defendants' vehicle struck him from the rear. Mrs. Zito, the wife of Victor Zito, who was likewise sitting on the front seat of the Zito vehicle corroborated her husband in this respect. The plaintiff stated that the car in which she was riding, that is the Zito car, had likewise come to a stop or almost stopped before defendants' vehicle struck them from the rear. That their vehicle only struck the car in front of them after defendants' car had struck them in the rear and that it was the collision of defendants' vehicle with theirs which caused them to strike the vehicle in front of them. It is to be further remembered that all of the vehicles which followed the blowout car did not stop instantly on the highway but proceeded for at least some distance before coming to a stop without causing trouble to each other. I, therefore, see no reason why if defendant had been going at the same rate of speed and had been observing the line of vehicles ahead of him as is required by the law, why he likewise could not have stopped in time and avoided the accident. I do not believe that the driver of defendants' car exercised that due care as was required of him under the circumstances then prevailing. It is to be remembered *327 also that the evidence in this case shows that the Zito car had stopped some six to eight feet behind the automobile preceding it when the Zito car was struck in the rear by defendants' driver. Let us assume for the sake of argument and accept as a fact that the Zito car and the cars immediately ahead of it were traveling at the rate of thirty miles per hour. According to the chart found in Section 6237 of Blashfield's Cyclopedia of Automobile Law and Practice I find that a car traveling at 30 miles per hour is moving at the speed of 44 feet per second, that it takes 33 feet reaction time, 40 feet actual stopping distance or a total of 73 feet to stop. We can well see then that Mr. Zito traveled the minimum stopping distance required by the vehicle preceding him, that is 73 feet, plus the 40 feet distance between the two cars while traveling, less the six to eight feet distance between the two cars after they stopped, immediately before the impact. This analysis shows that Mr. Zito must have traveled at least 113 feet from the time he was forty feet behind his lead car until he was struck. This shows that he covered more distance than the minimum distance for stopping and consequently a portion of the distance that he traveled in the 113 feet was used in reducing his speed. This convincingly shows that he and the other cars did not come to a sudden and abrupt stop.
It follows logically that if Mr. Adkins, defendants' driver, was traveling at the same rate of speed as the other vehicles and was approximately the same distance apart as the other vehicles as he claims he was, that he too should have been able to stop within the stopping distance of the Zito vehicle if he had been looking ahead and observing what was going on or if he had not been going so fast. It appears to me that if defendant had been maintaining a proper lookout and had observed what he could and should have observed in time under the circumstances then prevailing, or had maintained a proper speed or distance, as was required under the circumstances, that the accident would have been avoided. It is interesting to note what Mr. Adkins stated on cross examination:
"Q. When you realized that the Chevrolet in front of you had stopped, how much distance did you have at that time? A. You mean when I applied my brakes?
"Q. Yes. A. I imagine a little further than from here to the corner of the building over there (indicating).
"Q. Could you say that is about 35 or 40 feet? A. That's right, about 40 feetmaybe 50.
"Q. You would say 35 to 40 or maybe 50 feet? A. Yes, sir."
If the Zito car had come to a stop at the point or time when defendants' driver applied his brakes it is evident that defendants' driver did not observe the gradual stopping or slowing down of the Zito car. On the other hand if the Zito car had not come to a stop but was at that time applying its brakes and making braking noise, it certainly had to go a further distance to stop which would have allowed defendants' driver a further distance within which to stop and if he could not stop within that space it would indicate that he was going too fast. Although there was an emergency, the driver of the following automobile did not exercise due care under the circumstances. I am of the opinion that the proximate cause of the accident was the negligence of the defendants' driver in not maintaining proper control of his car and in not maintaining the proper lookout so he could have stopped before the collision.
It is to be remembered further that Mr. Adkins' mother was a passenger in his car sitting in the front seat and never testified in this case. Why, I do not know. The record doesn't state. Under the circumstances it must be assumed that her testimony would have been damaging to the defendants.
The majority opinion cites and compares this case to the Rhea v. Daigle, La.App., 72 So.2d 643 but it is to be observed and remembered that in the Rhea case the lead car came to a sudden and dead stop which is entirely different to the facts in the instant case.
*328 For the above and foregoing reasons I respectfully dissent from the majority opinion and think that the judgment of the Lower Court should be affirmed.